1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

| | |
|---|---|
| MARIA ALBANO, TERRENCE BOYD, CLARINDA BYRD, TRAVIS CLEVINGER, TAMMIE GREEN, MAYHUGH HORNE, MELISSA JARAMILLO, KEITH JOHNSON, DAVID KAPLAN, DANIEL KILGO, CURSILA LONGORIA, LUIS RAMOS, ADRIEN RODRIGUEZ, GILBERTO ROMAGNOLO, BRENDA SHALEY, ROBERT SMITH, ROBERT TAYLOR, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiffs,<br><br> v.<br><br>AMAZON.COM, INC., a Delaware corporation, and AMAZON ADVERTISING, LLC, a Delaware limited liability company<br><br>    Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT
(Case No.              )

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION.................................................................................................1

II.   PARTIES ...........................................................................................................3

    A.  Plaintiffs ...................................................................................................3

    B.  Defendant Amazon...................................................................................8

III.  FACTUAL ALLEGATIONS .............................................................................8

    A.  Amazon Exfiltrated Massive Amounts of User Data...............................8

    B.  Amazon Exfiltrates And Profits From De-Anonymized Data ...............10

    C.  Amazon Paid Developers to Integrate the Ads SDK Into Their Apps ...........12

    D.  Defendants' Lacked Privacy Disclosures...............................................13

    E.  Damages & Harm ...................................................................................14

IV.   JURISDICTION AND VENUE .......................................................................15

V.    CLASS ACTION ALLEGATIONS .................................................................16

VI.   STATUTE OF LIMITATIONS TOLLING .....................................................19

VII.  CAUSES OF ACTION .....................................................................................19

    COUNT ONE
    VIOLATION OF THE FEDERAL WIRETAP ACT,.................................19
    COUNT TWO
    VIOLATION OF THE STORED COMMUNICATIONS ACT, ..........................22
    COUNT THREE
    VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ....................23
    COUNT FOUR
    VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT ..................26
    COUNT FIVE
    VIOLATIONS OFSTATE COMMON LAW RIGHT TO PRIVACY .................28
    COUNT SIX
    ALABAMA DECEPTIVE TRADE PRACTICE ACT ........................................31
    COUNT SEVEN
    CALIFORNIA CONSTITUTIONAL INVASION OF PRIVACY
    CALIFORNIA CONSTITUTION, ARTICLE I, SECTION 1.............................33
    COUNT EIGHT
    CALIFORNIA INVASION OF PRIVACY ACT — WIRETAPPING LAW ......................35

CLASS ACTION COMPLAINT           i            Cotchett, Pitre & McCarthy, LLP
(Case No.          )                                  1809 7th Avenue, Suite 1610
                                             Seattle, WA 98101
                                             Telephone: (206) 802-1272
                                             Facsimile: (206) 299-4148

COUNT NINE
CALIFORNIA INVASION OF PRIVACY ACT — ELECTRONIC
TRACKING DEVICE ........................................................................38
COUNT TEN
CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT ....................................39
COUNT ELEVEN
CALIFORNIA UNFAIR COMPETITION LAW ...................................................42
COUNT TWELVE
CONNECTICUT UNFAIR TRADE PRACTICES ACT ...........................................45
COUNT THIRTEEN
UNFAIR AND DECEPTIVE TRADE PRACITCES ACT .........................................47
COUNT FOURTEEN
FLORIDA SECURITY OF COMMUNICATIONS ACT ..........................................49
COUNT FIFTEEN
ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ....51
COUNT SIXTEEN
ILLINOIS WIRETAPING, ELECTRONIC SURVEILLANCE,
AND INTERCEPTION OF COMMUNICATIONS LAW, ...................................53
COUNT SEVENTEEN
MASSACHUSETTS CONSUMER PROTECTION ACT ...........................................55
COUNT EIGHTEEN
MASSACHUSETTS WIRETAP ACT ...............................................................57
COUNT NINETEEN
MICHIGAN CONSUMER PROTECTION ACT ....................................................60
COUNT TWENTY
NEW YORK GENERAL BUSINESS LAW .........................................................62
COUNT TWENTY ONE
NEW YORK GENERAL BUSINESS LAW .........................................................64
COUNT TWENTY TWO
VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT, ...........................65
COUNT TWENTY THREE
UNFAIR TRADE PRACTICES AND CONSUMERP ROTECTION LAW ......................65
COUNT TWENTY FOUR
TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT, ...........67
COUNT TWENTY FIVE
VIRGINIA CONSUMER PROTECTION ACT ...................................................69

PRAYER FOR RELIEF ...............................................................................71

JURY DEMAND ........................................................................................72

Plaintiffs Maria Albano, Terrence Boyd, Clarinda Byrd, Travis Clevinger, Tammie Green, Mayhugh Horne, Melissa Jaramillo, Keith Johnson, David Kaplan, Daniel Kilgo, Cursila Longoria, Luis Ramos, Adrien Rodriguez, Gilberto Romagnolo, Brenda Shaley, Robert Smith, and Robert Taylor ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this action against Amazon, Inc. and Amazon Advertising, LLC (collectively "Defendants" or "Amazon"), seeking monetary, injunctive, and/or other equitable relief for the proposed Class and Subclasses, as defined below. Plaintiffs make the following allegations upon information and belief, the investigation of their counsel, and personal knowledge or facts that are a matter of public record.

## I.    INTRODUCTION

1.    In the process of becoming the fifth most valuable company in the world, with an astonishing market capitalization of $2.5 *trillion*, Amazon has abandoned long-standing boundaries of privacy in its insatiable quest for detailed private information about humanity. Using secret software embedded in mobile phones, Amazon covertly exfiltrated location and personal information of millions of Americans. The data that Amazon harvested reveals highly sensitive information about us all, such as where we live, where we work, where we worship, where and how frequently we receive medical treatments, and everywhere we go throughout every day of our lives.

2.    Amazon illegally collected this information without informing or seeking consent from millions of Americans, including Plaintiffs and Class members. Plaintiffs and Class members did not know and had no way to know that their data was continuously being exfiltrated, manipulated, and monetized by Amazon.

3.    Amazon has effectively tapped hundreds of millions of smartphones through a software development kit ("SDK") it licenses to third party mobile applications. SDKs generally provide application developers with the tools necessary to build their applications including APIs and other automated functions that operate in the background. The Amazon Ads SDK (the "Ads

CLASS ACTION COMPLAINT                                1                    Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                                                        1809 7th Avenue, Suite 1610
                                                                                                            Seattle, WA 98101
                                                                                                            Telephone: (206) 802-1272
                                                                                                            Facsimile: (650) 697-0577

SDK") operated in the background of these third-party developers' applications and the developers themselves may not have had any idea the extent to which their aps had become a Trojan Horse for Amazon's secret tracking mechanism.

4.     Amazon has been highly effective at integrating the Ads SDK throughout the ecosystem of mobile applications including 19,964 Android applications and 12,640 iOS iPhone applications. Applications running on the Ads SDK have cumulatively been downloaded tens of millions of times.

5.     Amazon's Ads SDK was imbedded within the third-party application, so a user would think they were just getting a game or a useful source of information and would have no idea they were also installing a method for Amazon to track their every move. The Ads SDK allowed Amazon to collect and exfiltrate extensive location and personal data about Plaintiffs and Class members.

6.     Amazon's fortunes have ballooned from intercepting, exfiltrating and using this trove of ill-gotten time and location data. It informs Amazon's own targeted advertising, personalized product recommendations, and strategic pricing optimization. The value of this massive data trove is extraordinary since a single person's data for online advertising is estimated to be worth about $263 per year.[1]

7.     Plaintiffs and Class members were never informed that the Ads SDK was collecting and exfiltrating their location and other data to Amazon. They did not consent to the collection and monetization of their personal, sensitive, and valuable data. Plaintiffs and Class members were not even clearly or plainly advised that this information was being collected. Amazon made no effort to directly obtain consumer consent themselves, knowing full-well that consumers would roundly decline to use an app if they knew it would track when and where they went throughout each day.

---

[1] Lukas Stein, What your data is actually worth, Datapods, October 10, 2023, https://www.datapods.app/blogs/what-your-data-is-actually-worth (last visited February 4, 2025).

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

8.     Amazon never informed Plaintiffs or Class members about their secret data collection practices and Amazon never received consent to compile this data. Amazon similarly never informed Plaintiffs or Class members of the many ways their data would be manipulated, analyzed, packaged, and profited from.

9.     Through the use of the Ads SDK and its secret tracking apparatus, Amazon violated federal and state laws and invaded the privacy of Plaintiffs and Class members.

10.     Plaintiffs bring this action against Amazon on behalf of themselves and all those similarly situated for damages, injunctive relief, and restitution.

## II.     PARTIES

### A.     Plaintiffs

11.     Plaintiff Daniel Kilgo is a citizen and resident of the State of Alabama, currently residing in Arab. Plaintiff Kilgo has an Android phone has used the mobile application MX Player, which incorporated Defendants' covert SDK. Plaintiff Kilgo has had this application on his phone for several years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

12.     Plaintiff Robert Taylor is a citizen and resident of the State of Connecticut, currently residing in New London. Plaintiff Taylor has an Android phone has used the mobile applications Subway Surfers, Candy Crush Saga, Viber, and My Talking Tom, which incorporated Defendants' covert SDK. Plaintiff Taylor has had one or more of these applications on his phone for over ten years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

13.     Plaintiff Tammie Green is a citizen and resident of the State of Louisiana, currently residing in Shreveport. Plaintiff Green has an iPhone and has used the mobile applications Free Tone – Calling and Texting, Subway Surfers, Candy Crush Saga, and Picsart, which incorporated

Defendants' covert SDK. Plaintiff Green has had one or more of these applications on her phone for several years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

14.     Plaintiff Gilberto Romagnolo is a citizen and resident of the State of California, currently residing in Los Angeles. Plaintiff Romagnolo has an Android phone and has used the mobile applications Subway Surfers, Candy Crush Saga, My Talking Tom, and Truecaller: ID & Spam Block, which incorporated Defendants' covert SDK. Plaintiff Romagnolo has had one or more of these applications on his phone for over eight years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

15.     Plaintiff Mayhugh Horne is a citizen and resident of the State of California, currently residing in Palm Springs. Plaintiff Horne has an iPhone and has used the mobile applications Classic Words and WeatherBug, which incorporated Defendants' covert SDK. Plaintiff Horne has had one or more of these applications on his phone for over ten years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

16.     Plaintiff Luis Ramos is a citizen and resident of the State of Florida, currently residing in Orlando. Plaintiff Ramos has an iPhone and has used the mobile applications Candy Crush Saga and QR reader for iPhone, which incorporated Defendants' covert SDK. Plaintiff Ramos has had one or more of these applications on his phone for over ten years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

17.     Plaintiff Terrence Boyd is a citizen and resident of the State of Illinois, currently residing in Fairview Heights. Plaintiff Boyd has an Android phone and has used the mobile applications Candy Crush Saga and Subway Surfers, which incorporated Defendants' covert SDK. Plaintiff Boyd has had one or more of these applications on his phone for over five years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

18.     Plaintiff David Kaplan is a citizen and resident of the State of Illinois, currently residing in Hawthorn Woods. Plaintiff Kaplan has an iPhone and has used the mobile applications WeatherBug, QR reader for iPhone, and Candy Crush Saga, which incorporated Defendants' covert SDK. Plaintiff Kaplan has had one or more of these applications on his phone for several years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

19.     Plaintiff Keith Johnson is a citizen and resident of the State of Illinois, currently residing in Chicago. Plaintiff Johnson has an iPhone and has used the mobile applications Snap & translate translator, Free Tone – Calling & Texting, WeatherBug, and QR reader for iPhone, which incorporated Defendants' covert SDK. Plaintiff Johnson has had one or more of these applications on his phone for several years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

20.     Plaintiff Maria Albano is a citizen and resident of the State of Massachusetts, currently residing in Springfield. Plaintiff Albano has an iPhone and has used the mobile applications Subway Surfers, Candy Crush Saga, and QR reader for iPhone, which incorporated Defendants' covert SDK. Plaintiff Albano has had one or more of these applications on her phone

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

for several years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

21.     Plaintiff Clarinda Byrd is a citizen and resident of the State of Michigan, currently residing in Oak Park. Plaintiff Byrd has an Android phone and has used the mobile applications WeatherBug, Subway Surfers, Candy Crush Saga, and Briefing (Flipboard), which incorporated Defendants' covert SDK. Plaintiff Byrd has had one or more of these applications on her phone for several years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

22.     Plaintiff Adrien Rodriguez is a citizen and resident of the State of New York, currently residing in New York. Plaintiff Rodriguez has both an iPhone and an Android phone and has used the mobile applications QR reader for iPhone, Viber, Truecaller: ID & Spam Block, and Picsart, which incorporated Defendants' covert SDK. Plaintiff Rodriguez has had one or more of these applications on her phone for at least two years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

23.     Plaintiff Robert Smith is a citizen and resident of the State of Ohio, currently residing in Delaware. Plaintiff Smith has an iPhone and has used the mobile applications QR reader for iPhone, What's the difference: Spot it, and WeatherBug, which incorporated Defendants' covert SDK. Plaintiff Smith has had one or more of these applications on his phone for several years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

24.    Plaintiff Brenda Shaley is a citizen and resident of the State of Pennsylvania, currently residing in New Castle. Plaintiff Shaley has an iPhone and has used the mobile applications WeatherBug, Candy Crush Saga, Picsart, and QR reader for iPhone, which incorporated Defendants' covert SDK. Plaintiff Shaley has had one or more of these applications on her phone for three to five years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

25.    Plaintiff Cursila Longoria is a citizen and resident of the State of Texas, currently residing in Dallas. Plaintiff Longoria has both an iPhone and an Android phone and has used the mobile applications Free Tone – Calling and Texting, Grocery list with sync, Letter Soup, WeatherBug, Candy Crush Saga, and Truecaller: ID & Spam Block, which incorporated Defendants' covert SDK. Plaintiff Longoria has had one or more of these applications on her phone for at least eight years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

26.    Plaintiff Melissa Jaramillo is a citizen and resident of the State of Virginia, currently residing in Gainesville. Plaintiff Jaramillo has both an iPhone and an Android phone and has used the mobile applications WeatherBug, QR reader for iPhone, and Candy Crush Saga, which incorporated Defendants' covert SDK. Plaintiff Jaramillo has had one or more of these applications on her phone for at least five years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

27.    Travis Clevinger is a citizen and resident of the State of Washington, currently residing in Liberty Lake. Plaintiff Clevinger has an Android phone and has used the mobile applications Candy Crush Saga and Hill Climb Racing, which incorporated Defendants' covert

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

SDK. Plaintiff Clevinger has had one or more of these applications on his phone for over ten years. On information and belief, Plaintiff's location and personal data were tracked through Defendants' SDK and transmitted to Defendants' database and used by Defendants and/or monetized by Defendants without Plaintiff's knowledge or consent.

**B.    Defendant Amazon**

28.    Defendant Amazon.com, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

29.    Defendant Amazon Advertising, LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109. Throughout this complaint, "Amazon" refers to both Amazon.com, Inc. and Amazon Advertising, LLC.

### III.    FACTUAL ALLEGATIONS

**A.    Amazon Exfiltrated Massive Amounts of User Data**

30.    Amazon has collected the data of millions of Americans to create highly detailed behavior and movement profiles of these Americans, including Plaintiffs.

31.    Amazon amassed this data without consumers' knowledge by surreptitiously integrating software into consumer mobile applications, allowing Amazon to exfiltrate this data directly from consumers' phones. Amazon monetized this data at least through informing their own targeted advertising, personalized product recommendations, and strategic pricing optimization. The value of this data is extraordinary as one person's data for online advertising is estimated to be worth about $263 per year.[2]

32.    On information and belief, Defendants developed the Amazon Ads SDK to be integrated into mobile phone applications in 2013. The Ads SDK was designed to collect the

---

[2] Lukas Stein, What your data is actually worth, Datapods, October 10, 2023, https://www.datapods.app/blogs/what-your-data-is-actually-worth (last visited February 4, 2025).

location, movement, and other data from a person's phone. Generally, SDKs provide application developers with the tools necessary to build their applications including application programming interfaces ("APIs") and other automated functions that operate in the background. As such, the Ads SDK was outwardly meant to facilitate the delivery of Amazon's ads to users through third-party mobile phone applications. However, the secret purpose of Ads SDK was to continuously extract granular time and location data from consumers' smartphones.

33.    On information and belief, the Amazon Ads SDK has been integrated into 12,640 iOS apps in the iPhone App Store and 19,964 Android Apps in the Play Store. The Amazon Ads SDK has been integrated into some of the most popular and frequently downloaded mobile applications ever developed.

34.    On information and belief, the Amazon Ads SDK has been integrated into at least the following iPhone applications:

     a.   Free Tone – Calling and Texting

     b.   Stick Hero

     c.   What's the difference spot it

     d.   Snap & translate translator

     e.   Grocery list with sync

     f.   Classic Words

     g.   Letter Soup

     h.   PixWords

     i.   WeatherBug – Weather Forecast

     j.   QR reader for iPhone

35.    On information and belief, the Amazon Ads SDK has been integrated into at least the following Android applications:

     a.   Subway Surfers

     b.   Candy Crush Saga

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

c. Briefing (Flipboard)

d. MX Player

e. Viber

f. My Talking Tom

g. Truecaller: ID & Spam Block

h. Picsart

i. Hill Climb Racing

j. Ludo King

36.    Just these twenty applications (of the more than 30,000 mobile applications with the Ads SDK) have been downloaded hundreds of millions of times by tens of millions of Americans.

37.    Amazon has incentivized the adoption of the Ads SDK through purchasing advertising space on these mobile applications. Amazon's Ads SDK allows mobile developers to monetize their applications through Amazon's purchase of banner ads, interstitial ads, and video ads. On information and belief, Amazon has paid application developers millions of dollars, through advertising purchases, to integrate the Ads SDK that covertly siphons sensitive user data into their applications.

38.    Once the Ads SDK is integrated into third-party applications, Amazon gains access to de-anonymized sensitive data of these application users, without Amazon having any pre-existing relationship with those consumers, without Amazon explicitly disclosing its data collection practices, and without Amazon having obtained consent for its invasive location tracking. Amazon has covertly tracked Plaintiffs and Class members to their detriment and to enrich itself.

**B.    Amazon Exfiltrates And Profits From De-Anonymized Data**

39.    Amazon's Ads SDK extracts and exfiltrates consumer data that is de-anonymized, or can easily be de-anonymized, as this data is collected in coordination with sensitive

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

identifiable information such as unique device IDs. Amazon can integrate this sensitive information with personally identifiable information ("PII") connected with a device ID to create individualized and detailed consumer profiles that include detailed time and location information.

40.    Mobile Advertising IDs ("MAID") are unique phone identifiers that are used by advertisers to aid in personalized advertising to consumers. AdID is the MAID for all Android devices, a 32-digit individualized string, and IDFA functions similarly for every IOS device. As such, MAIDs act as a unique marker or signature for consumers across their mobile activities.

41.    Within applications from an individual developer, Identifiers for Vendors ("IDFV") similarly function to track user activity within IOS applications, which allows for cross-promotion among their various apps. These and other identifiers provide developers, marketers, and data brokers with more accurate attribution for user actions.

42.    Moreover, geolocation data is sensitive information that in itself reveals the user's identity. Timestamped geolocation data reveals where a person lives, where they work, where and when they pray, and where and when they go to the doctor. This information is not only immensely sensitive, but it also easily identifies a person because human movement is so highly unique as even a coarse spatial and temporal data set is enough to "uniquely identify 95% of [] individuals."[3]

43.    Amazon admits that "Amazon Ads harness[] billions of unique, proprietary signals to help you reach relevant audiences on Amazon and beyond, even when ad identifiers are not present."[4] Thus, Defendants promise that they are able identify consumers and their habits even in the absence of ad IDs.

44.    Amazon's unique "proprietary signals" permit the creation of comprehensive consumer profiles by combining in-person and online consumer action. Defendants promise that

---

[3] Yves-Alexandre de Montjoye, et al, *Unique in the Crowd: The privacy bounds of human mobility*, Sci Rep 3, 1376 (2013), https://www.nature.com/articles/srep01376 (last visited February 5, 2025).
[4] *See*, https://advertising.amazon.com/insights-and-planning/audiences (last visited February 5, 2025).

CLASS ACTION COMPLAINT                                     11                        Cotchett, Pitre & McCarthy, LLP
(Case No.                              )                                                                 1809 7th Avenue, Suite 1610
                                                                                                          Seattle, WA 98101
                                                                                                          Telephone: (206) 802-1272
                                                                                                          Facsimile: (650) 697-0577

they can craft "tailored messages that drive action" because they have "billions of proprietary signals informed by online and offline touchpoints."[5] Amazon has recognized the immense value of this ill-gotten consumer data for their advertising business, which has grown to generate *$52.7 billion* in revenue in 2024, third largest in the world.[6]

### C.   Amazon Paid Developers to Integrate the Ads SDK Into Their Apps

45.   Amazon purchases advertising space on mobile applications to promote its various products. On information and belief, the only way to push these banner and interstitial ads through a mobile application is through the use of Amazon's Ads SDK. Amazon's ad spend on mobile applications exceeds tens of millions of dollars. To access these millions in ad revenue, third party applications are required to integrate Amazon's Ads SDK into their application.

46.   Amazon provided licensing rights for the Ads SDK integration along with provisions for the sale of advertising space to Amazon. To the extent Amazon's agreements with app developers may have permitted Amazon to exfiltrate user data, third party application developers may or may not have known the Ads SDK was covertly exfiltrating their users' data. Plaintiffs and Class members were not privy to the agreements between app developers and Amazon, in any event, and did not assent to such agreements. Plaintiffs and Class members did not give permission for their data to be used other than by the app in question and had no way to know and did not authorize Amazon or the relevant app to exfiltrate, collect, and monetized their data.

47.   When a user enables location tracking for an app to support the function of that app, the user is only granting permission to the mobile app itself, not any underlying software that has a purpose distinct from the functions of the app itself. At no point does Amazon inform

---

[5] *See*, https://advertising.amazon.com/lp/messages-that-matter (last visited February 5, 2025).
[6] Julia Faria, Advertising revenue of major ad-selling companies worldwide in 2024, Statista, January 29, 2025, https://www.statista.com/statistics/1202672/digital-ad-revenue-ad-selling-companies-worldwide/ (last visited January 5, 2025).

CLASS ACTION COMPLAINT                          12                    Cotchett, Pitre & McCarthy, LLP
(Case No.                        )                                          1809 7th Avenue, Suite 1610
                                                                            Seattle, WA 98101
                                                                            Telephone: (206) 802-1272
                                                                            Facsimile: (650) 697-0577

consumers that its Ads SDK is collecting their sensitive geolocation data, nor does it prompt consumers to grant Amazon permission to access or collect any data whatsoever.

**D.     Defendants' Lacked Privacy Disclosures**

48.     Amazon had varying levels of control over privacy disclosures and consent language that application developers presented to consumers.

49.     Neither Amazon nor the mobile applications informed consumers that Amazon was collecting time and location data through the Ads SDK. Amazon and mobile applications similarly did not inform consumers that Amazon would aggregate, manipulate, exfiltrate and monetize this data.

50.     Amazon did not provide consumers with any sort of notice of their data and privacy practices with respect to information harvested by the Ads SDK, nor did the mobile apps notify consumers about Amazon's practices on Amazon's behalf. Similarly, neither Amazon nor the mobile apps notified consumers of the ways in which their data would be used, nor did consumers agree to have their data used for Amazon's own products or services.

51.     While third-party mobile applications request and/or receive user permission to use their location and other data for in-app features, Amazon never provided Plaintiffs and the Class with such information. Once the Ads SDK was integrated into these applications, Amazon began to collect geolocation and other sensitive data far beyond what was needed by the app or the Ads SDK to function as intended.

52.     Even if a consumer investigated Amazon outside of their app, navigated to their website, and read their privacy disclosures, a consumer would still not be aware of the extent their data was being collected, exfiltrated and monitored, and/or what Amazon did with their sensitive data once it had been collected.

53.     Amazon's Ads SDK covertly operated in the background, so absent notification by Amazon or the relevant mobile application, users would be reasonably ignorant of the Ads SDK's existence or function.

CLASS ACTION COMPLAINT                    13                    Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                                 1809 7th Avenue, Suite 1610
                                                                              Seattle, WA 98101
                                                                              Telephone: (206) 802-1272
                                                                              Facsimile: (650) 697-0577

54.     App users would similarly be unaware that Amazon was collecting data from their smartphones through the covert Ads SDK and the unique personal identifiers. Amazon never informed or notified app users that they were collecting their sensitive data through the Ads SDK and the mobile applications. And they never informed or notified app users that they would use the data they collected to enrich themselves.

55.     On information and belief, a consumer would not know that any given app has the Amazon Ads SDK embedded. The entire data collection process takes place surreptitiously without the consumer's knowledge or consent.

**E.     Damages & Harm**

56.     As described more fully above, the data that Amazon extracted, manipulated, and monetized may be used to identify consumers' sensitive location and other data. The collection and monetization of this data is an unwarranted and unauthorized intrusion into the most private areas of a consumer's life and has caused, or is likely to cause, substantial injury to consumers and their privacy interests.

57.     Each Plaintiff's cell phone contains one or more mobile applications that have embedded Amazon's Ads SDK.

58.     On information and belief, the Ads SDK harvested several types of data from each Plaintiff's phone without their knowledge or consent, and exfiltrated this data to Amazon.

59.     Each Plaintiff was entirely unaware that Amazon's Ads SDK was covertly installed on his or her phone. Each Plaintiff was similarly unaware that the Ads SDK was secretly collecting her or his location and other data and exfiltrating it to Amazon.

60.     None of the Plaintiffs consented to Amazon's conduct and they do not have any relationship with Amazon concerning the collection of private information from their mobile devices.

61.     Amazon's surreptitious and routine collection of precise location and other data reveals when and where someone goes to receive medical care, reproductive healthcare, where

CLASS ACTION COMPLAINT
(Case No.                    )

14

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

they go to worship, where and when they receive mental healthcare, whether they are at a shelter for domestic violence survivors, or if they are in addiction recovery. Such hyper-sensitive data can reveal someone's religious affiliation, their sexual orientation, their medical conditions, and whether they are part of an at-risk population.

62.     Not only is Plaintiffs' and Class members' data incredibly personal, but it has tangible value. Amazon's conduct has caused Plaintiffs and Class members to lose control over this valuable data. Amazon has been wrongfully enriched from Plaintiffs' ill-gotten data to the tune of $263 per person per year, or some portion of Amazon's $52.7 billion annual advertising revenue.[7]

63.     Plaintiffs and Class members have a reasonable expectation of privacy at various points throughout their lives. Plaintiffs and Class members reasonably expect that their every movement and location will not be collected, stored, analyzed and monetized without express consent or authorization. By covertly harvesting, exfiltrating, manipulating, and monetizing their personal information, Amazon has invaded Plaintiffs and Class members' privacy rights.

64.     The Ads SDK has allowed Amazon to secretly create a detailed log of Plaintiffs' and Class members' precise and private movement patterns, along with a dossier of their likes, interests, habits, and activities, all without consent, permission or even simple notice.

## IV.    JURISDICTION AND VENUE

65.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from a Defendant, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

---

[7] Julia Faria, Advertising revenue of major ad-selling companies worldwide in 2024, Statista, January 29, 2025, https://www.statista.com/statistics/1202672/digital-ad-revenue-ad-selling-companies-worldwide/ (last visited January 5, 2025).

66.     This court has personal jurisdiction over Amazon.com, Inc. because Amazon has its principal headquarters in Seattle, Washington, does business in Washington and in this Judicial District, directly or through agents, and has sufficient minimum contacts with Washington and this Judicial District such that it has intentionally availed itself of the laws of the United States and Washington.

67.     This court has personal jurisdiction over Amazon Ads, LLC because Amazon has its principal headquarters in Seattle, Washington, does business in Washington and in this Judicial District, directly or through agents, and has sufficient minimum contacts with Washington and this Judicial District such that it has intentionally availed itself of the laws of the United States and Washington.

68.     Venue is proper under 28 U.S.C. § 1391(a) through (d) because Amazon's headquarters and principal place of business are located in this District, Amazon resides in this District, and substantial parts of the events or omissions giving rise to the claims occurred in or emanated from this District, including, without limitation, decisions made by Amazon's governance and management personnel.

## V.    CLASS ACTION ALLEGATIONS

69.     Pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), Plaintiffs bring this action on behalf of a proposed Class (the "Nationwide Class") and "State Subclasses" defined as follows:

**Nationwide Class:** All persons in the United States whose data was collected by Defendants through the Ads SDK (the "Class").

**State Subclasses**

**Alabama Subclass:** All members of the Class who reside in the State of Alabama.

**California Subclass:** All members of the Class who reside in the State of California.

**Connecticut Subclass:** All members of the Class who reside in the State of Connecticut.

**Florida Subclass:** All members of the Class who reside in the State of Florida.

**Illinois Subclass:** All members of the Class who reside in the State of Illinois.

**Louisiana Subclass:** All members of the Class who reside in the State of Louisiana.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

**Massachusetts Subclass:** All members of the Class who reside in the State of Massachusetts.

**Michigan Subclass:** All members of the Class who reside in the State of Michigan.

**New York Subclass:** All members of the Class who reside in the State of New York.

**Ohio Subclass:** All members of the Class who reside in the State of Ohio.

**Pennsylvania Subclass:** All members of the Class who reside in the State of Pennsylvania.

**Texas Subclass:** All members of the Class who reside in the State of Texas.

**Virginia Subclass:** All members of the Class who reside in the State of Virginia.

**Washington Subclass:** All members of the Class who reside in the State of Washington.

70.     Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers or directors, any successors, all persons who make a timely election to be excluded from the Class, and any judge who adjudicates this case, including their staff and immediate family.

71.     Plaintiffs reserve the right to amend the class definition and/or subclass definitions.

72.     Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

73.     **Numerosity and Ascertainability:** members of the Class are so numerous that joinder is impracticable. There are, at a minimum, millions of members of the proposed Class and, at minimum, tens of thousands of members of each State Subclass.

74.     **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class members. These common questions include:

a.   Whether Defendants collected Plaintiffs' and Class members' location and other data;

CLASS ACTION COMPLAINT                    17                Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                              1809 7th Avenue, Suite 1610
                                                                                    Seattle, WA 98101
                                                                                    Telephone: (206) 802-1272
                                                                                    Facsimile: (650) 697-0577

b.  Whether Plaintiffs and Class members were made aware or consented to the collection of their data;

c.  Whether Defendants were unjustly enriched to the detriment of Plaintiffs and Class members;

d.  Whether Defendants' conduct constitutes common law violations of privacy;

e.  Whether Defendants' conduct constitutes violations of the Computer Fraud and Abuse Act;

f.  Whether Defendants' conduct constitutes violations of the Stored Communications Act;

g.  Whether Defendants' conduct constitutes violations of the Federal Wiretap Act and/or Electronic Communications Privacy Act;

h.  Whether and to what extent Plaintiff and Class members have been damaged by Defendants' conduct; and

i.  The nature and scope of appropriate injunctive relief.

75.    These common questions of law and fact predominate over questions that affect only individual Class members.

76.    **Typicality:** Plaintiffs' claims are typical of the other Class members' claims because all Class members were comparably injured through Defendants' substantially uniform misconduct, as described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other members of the Class that they represent, and there are no defenses that are unique to the Plaintiffs. The claims of Plaintiffs and Class members arise from the same operative facts and are based on the same legal theories.

77.    **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action litigation.

78.    **Superiority**: Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class member is small, such that, absent

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

representative litigation, it would be infeasible for Class members to redress the wrongs done to them.

79.    Defendants have acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## VI.    STATUTE OF LIMITATIONS TOLLING

80.    All applicable statutes of limitations have been tolled by Amazon's knowing and active concealment of the facts alleged herein. The causes of action alleged did not accrue until Plaintiffs and Class members discovered that Amazon was secretly exfiltrating, manipulating, and monetizing their location and other data. Plaintiffs and Class members could not have reasonably discovered Amazon's secret practices.

81.    Plaintiffs and Class members had no realistic ability to discern that Amazon was collecting, exfiltrating and monetizing their geolocation and other data until—at the earliest—January of 2025, when reports first began to surface concerning Amazon's collection and monetization of geolocation data harvested through Amazon's Ads SDK.

82.    Defendants remain under a continuing duty to disclose to Plaintiffs and Class members their data harvesting practices and the use of this data in their targeted advertising, strategic pricing optimization, and personalized product recommendations. As such, all applicable statutes of limitations have been tolled.

## VII.    CAUSES OF ACTION
### COUNT ONE
## VIOLATION OF THE FEDERAL WIRETAP ACT,
### 18 U.S.C. §§ 2510, et seq.
(ON BEHALF PLAINTIFFS AND THE NATIONWIDE CLASS)

83.    Plaintiffs incorporate by reference paragraphs 1-82 as if fully set forth herein.

84.    The Federal Wiretap Act ("FWA"), as amended by the Electronic Communications Privacy Act of 1986 ("ECPA"), prohibits the intentional interception, use, or disclosure of any wire, oral, or electronic communication.

CLASS ACTION COMPLAINT                    19                Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                        1809 7th Avenue, Suite 1610
                                                                            Seattle, WA 98101
                                                                            Telephone: (206) 802-1272
                                                                            Facsimile: (650) 697-0577

85.     In relevant part, the FWA prohibits any person from intentionally intercepting, endeavoring to intercept, or procuring "any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The FWA also makes it unlawful for any person to intentionally disclose, or endeavor to disclose, to any other person or to intentionally use, or endeavor to use, the "contents of any wire, oral, or electronic communication, knowing or having reason to know that" the communication was obtained in violation of the FWA. 18 U.S.C. § 2511(1)(c) & (d).

86.     The FWA provides a private right of action to any person whose wire, oral, or electronic communication is intercepted, used, or disclosed. 18 U.S.C. § 2520(a). The FWA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

87.     The FWA defines "electronic communication" as "any transfer of signs, signals, . . . data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo optical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12).

88.     The FWA defines "electronic, mechanical, or other device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication." 18 U.S.C. § 2510(5).

89.     The FWA defines "contents," with respect to any covered communication, to include "any information concerning the substance, purport, or meaning of that communication[.]" 18 U.S.C. § 2510(8).

90.     The FWA defines "person" to include "any individual, partnership, association, joint stock company, trust, or corporation[.]" 18 U.S.C. § 2510(6).

91.     Defendants, corporations, are each a person as defined by 18 U.S.C. § 2510(6).

92.    As alleged herein, the Defendants have intercepted, in real time and as they were transmitted, the contents of electronic communications.

93.    The data and transmissions within, to, and from Plaintiff's and Class members' phones constitute "electronic communications," as defined by 18 U.S.C. § 2510(12), as they are transfers of signals, data, and intelligence transmitted by electromagnetic, photoelectronic or photo optical systems that affect interstate commerce.

94.    Defendants intercepted these transmissions via the Amazon Ads SDK.

95.    As detailed herein, the electronic communications are tied to individuals and are not anonymized because, on information and belief, Defendants' Ads SDK collects app users' mobile device identifiers and other information that app developers provide to Defendants.

96.    Plaintiffs and Class members have a reasonable expectation of privacy within their phones. Further, there is a reasonable expectation that the activities a person conducts with their phones, *i.e.*, app usage and data related thereto, are private.

97.    Common understanding of how smartphones work creates a reasonable expectation that Defendants would not intercept and divert the electronic communications described above.

98.    In further violation of the FWA, Defendants have intentionally used or endeavored to use the contents of the communications described above knowing or having reason to know that the information was obtained through interception in violation of 18 U.S.C. §2511(1)(a). 18 U.S.C. §2511(1)(d).

99.    Specifically, Defendants have used the contents of the communications described above to: (1) inform their immensely profitable targeted advertising business; (2) more specifically personalize product recommendations; and (3) enhance strategic pricing optimization, for their own financial and commercial benefit, obtaining substantial profit.

100.    As a result, Plaintiffs and Class members have suffered harm and injury due to the interception, disclosure, and/or use of communications containing their private and Personal Information.

101.    Pursuant to 18 U.S.C. § 2520, Plaintiffs and Class members have been damaged by the interception, disclosure, and/or use of their communications in violation of the Wiretap Act and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and the Class and any profits made by Defendants as a result of the violation or (b) statutory damages for each Class member of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

102.    Plaintiffs and Class members seek compensatory, injunctive, and equitable relief in an amount to be determined at trial, including an award of reasonable attorneys' fees and costs and punitive or exemplary damages for Defendants' willful violations.

<u>**COUNT TWO**</u>
**VIOLATION OF THE STORED COMMUNICATIONS ACT,**
**18 U.S.C. §§ 2701, *et seq*.**
(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)

103.    Plaintiffs incorporate by reference paragraphs 1-82 as if fully set forth herein.

104.    The Stored Communications Act ("SCA") incorporates the terms and definitions of 18 U.S.C. § 2510, the ECPA. 18 U.S.C. § 2711.

105.    The ECPA, 18 U.S.C §§ 2510, *et seq*. broadly defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photoopitcal system that affects interstate or foreign commerce…" 18 U.S.C. § 2510(12).

CLASS ACTION COMPLAINT                         22                  Cotchett, Pitre & McCarthy, LLP
(Case No.                )                                           1809 7th Avenue, Suite 1610
                                                                     Seattle, WA 98101
                                                                     Telephone: (206) 802-1272
                                                                     Facsimile: (650) 697-0577

106. Pursuant to the ECPA and the SCA, "electronic storage" means any "temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof." 18 U.S.C. § 2510(17)(A).

107. The SCA mandates, among other things, that it is unlawful for a person to obtain access to stored communications on another's computer system without authorization. 18 U.S.C. § 2701.

108. As detailed herein, Defendants have unlawfully accessed, collected, captured, transmitted, compiled, stored, analyzed, and monetized Plaintiffs' and Class members' highly sensitive personal and location data without authorization, consent, or even mere notice.

109. Defendants have programmed their Ads SDK to exfiltrate the location and other information of all users of any third-party mobile application that integrated Defendants' Ads SDK. Defendants have violated 18 U.S.C. § 2701 because they intentionally accessed and obtained private communications and data stored in a user's phone and/or relevant centralized server without authorization or in excess of authorization.

110. Defendants have willfully and intentionally violated § 2701, and Plaintiffs and Class members have suffered actual harm. Pursuant to 18 U.S.C. § 2707, Plaintiffs, on behalf of themselves and the Class, seek an order enjoining Defendants' conduct and disgorging Defendants of their ill-gotten data as well as any algorithms informed by this ill-gotten data, actual statutory, and punitive damages, and reasonable attorneys' fees.

## COUNT THREE
### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### 18 U.S.C. §§ 1030, *et seq*.
(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS)

111. Plaintiffs incorporate by reference paragraphs 1-82 as if fully set forth herein.

112. The Computer Fraud and Abuse Act ("CFAA"), enacted in 1986 as part of the ECPA, prohibits the intentional accessing, without authorization or in excess of authorization, of a computer under certain circumstances. 18 U.S.C. § 1030(a).

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

113.    The Act reflects Congress's judgment that users have a legitimate interest in the confidentiality and privacy of information within their computers.

114.    The CFAA specifically provides that it is unlawful to "intentionally access a computer without authorization or exceed[] authorized access, and thereby obtain[]…information from any protected computer." 18 U.S.C. § 1030(a)(2)(c).

115.    The CFAA also specifically provides that it is unlawful to "knowingly and with intent to defraud, access[] a protected computer without authorization or exceed[ing] authorized access" and thereby "further[] the intended fraud and obtain[] anything of value…." 18 U.S.C. § 1030(a)(4).

116.    Plaintiffs and Defendants, as corporations or legal entities, are "persons" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(12).

117.    A "computer" is defined as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(10).

118.    "Exceeds authorized access" is defined as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain." 18 U.S.C. § 1030(e)(6).

119.    A "protected computer" is defined as "a computer . . . which is used in or affecting interstate or foreign commerce or communication…, [or that] has moved in or otherwise affects interstate or foreign commerce." 18 U.S.C. § 1030(e)(2)(B).

120.    Plaintiffs' and Class members' smartphones constitute a "computer" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(1).

121.    The smartphones of Plaintiffs and Class members are used in and affect interstate and foreign commerce and constitute "protected computers" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(2)(B).

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

122.    Defendants intentionally accessed the protected computers in Plaintiffs and Class members' possession via Defendants' Ads SDK and other software without Plaintiffs' or Class members' authorization, or in a manner that exceeded Plaintiffs' and Class members' authorization, and obtained information therefrom in violation of the CFAA. 18 U.S.C. § 1030(a)(2)(C).

123.    As alleged herein, Defendants' conduct constituted a knowing intent to defraud Plaintiffs and Class members of their valuable personal data and profit thereby. 18 U.S.C. §1030(a)(4).

124.    Defendants' use of MAIDs, IDFAs, IDFVs and its SDK constitutes access to Plaintiffs' and Class members' smartphones.

125.    The value of the information Defendants obtained from the protected computers in Plaintiffs' and Class members' possession exceeded $5,000 in a one-year period, as evidenced by Defendants' billions of dollars of profits from the use of this information. 18 U.S.C. § 1030(a)(4).

126.    Plaintiffs and Class members have suffered harm and injury due to Defendants' unauthorized access to their smartphones.

127.    A civil action for violation of the CFAA is proper if the conduct involves "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value." Because the loss to Plaintiffs and Class members during any one-year period within the relevant timeframe, including the loss of their privacy interest in and control over their personal data, exceeded $5,000 in the aggregate, Plaintiffs and the Class are entitled to bring this civil action and are entitled to economic damages, compensatory damages, injunctive, equitable, and all available statutory relief, as well as their reasonable attorney's fees and costs and other relief as permitted by the CFAA. 18 U.S.C. § 1030(g)

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

**COUNT FOUR**

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**RCW § 19.86, et seq.**

(ON BEHALF OF THE NATIONWIDE CLASS)

128.    Plaintiffs, individually, on behalf of the Nationwide Class incorporate by reference the allegations contained in Paragraphs 1-82 as if fully set forth herein.

129.    The Washington Consumer Protection Act ("Washington CPA") declares that unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. Wash. Rev. Code § 19.86.020.

130.    Defendants are each a "person" as defined by Wash. Rev. Code § 19.86.010(1), which includes corporations, trusts, unincorporated associations and partnerships.

131.    Defendants engage in "trade" or "commerce" as defined by Wash. Rev. Code § 19.86.010(2), which includes the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington. Defendants have engaged in unfair practices by:

a.    Intercepting, collecting, using, and monetizing Plaintiff's and Class members' data without obtaining their consent;

b.    Omitting, suppressing, and concealing the material fact that Defendants were intercepting, collecting, and using Plaintiff's and Class members' data for commercial benefit;

c.    Omitting, suppressing, and concealing material facts regarding the functionality of Defendants' Ads SDK and associated applications with respect to the privacy of consumers in their home, in hotels, at their doctor's office, and going throughout their day;

d.    Misrepresenting the purpose of Defendants' Ads SDK and associated applications and that it would protect the privacy of Plaintiff's and the Class members' data, including that it would not intercept, collect, use, or monetize such data without consumers' express consent; and

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

e.  Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiff's and Class members' data.

132.    Defendants acted intentionally, knowingly, and maliciously to violate the Act, and recklessly disregarded Plaintiff's and Class members' rights and harmed the public interest, because Defendants intentionally intercepted, collected, used, and monetized Plaintiff's and Class members' data without obtaining their consent.

133.    Defendants' acts affected the public interest because Amazon is headquartered in Washington State and the public has an interest in the corporations that are headquartered in this case to not engage in nationwide deceptive practices that emanate from Washington State. Additionally, consumers in Washington State are affected by Amazon's deceptive and/or unfair practices.

134.    The fact that Defendants intercepted, collected, used, and monetized Plaintiff's and Class members' data was material to Plaintiffs and Class members. This is a fact that reasonable consumers would consider important when choosing to purchase, use or download an application.

135.    Plaintiffs and Class members were deceived and/or could reasonably be expected to be deceived by Defendants' material misrepresentations and omissions regarding the functionality of Defendants' Ads SDK and associated applications, the security and privacy of their data, and their privacy to their detriment.

136.    Plaintiffs and Class members could not have reasonably avoided Defendants' practices as described herein because Defendants concealed their practices.

137.    Plaintiffs and Class members have derived no benefit from Defendants' surreptitious collection and exploitation of their private information, and there are no countervailing benefits to them or to competition resulting from Defendants' unauthorized tracking, use and monetization of consumer data.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

138.     Plaintiffs and Class members and their property interests have been substantially injured by Defendants' practices described herein because their rights to privacy have been violated, and because substantial numbers of them. As such, Defendants' deceptive and unfair acts and practices affect the public interest as they have had the capacity to injure and have injured other persons.

139.     As a direct and proximate result of Defendants' unfair practices, Plaintiffs and Class members have suffered and will continue to suffer injury, losses, and damages, but not limited to: loss of privacy; damage to and diminution of the value of their personal information; and the likelihood of future misuse of their data.

## COUNT FIVE
## VIOLATIONS OFSTATE COMMON LAW RIGHT TO PRIVACY
### (ON BEHALF PLAINTIFFS AND THE
### MEMBERS OF EACH STATE SUBCLASS)

140.     Plaintiffs incorporate by reference paragraphs 1-82 as if fully set forth herein.

141.     State Common law prohibits Defendants from intentional intrusion into the personal matters of Plaintiffs and State Subclass members, including their location and private data.

142.     Plaintiffs and State Subclass members hold, and at all relevant times held, a legally protected privacy interest in their PII, location, and other personal data and are entitled to the protection of private property, matters, and information therein from intentional intrusions and unauthorized access.

143.     As Plaintiffs and State Subclass members used and carried their phones throughout their days in their homes, in hotels, at work, at the doctor's office, when they worshipped, or when they were receiving mental or reproductive health care, they unknowingly created troves of highly sensitive data mapping of their respective personal lives which Defendants collected, captured, transmitted, accessed, compiled, stored, analyzed, and monetized—all without their knowledge or informed consent.

CLASS ACTION COMPLAINT                    28              Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                    1809 7th Avenue, Suite 1610
                                                                 Seattle, WA 98101
                                                                 Telephone: (206) 802-1272
                                                                 Facsimile: (650) 697-0577

144.    The private information of Plaintiffs and State Subclass members consists of PII, location, and other personal data that were never intended to be exfiltrated.

145.    Plaintiffs and State Subclass members had a legitimate and reasonable expectation of privacy regarding their PII and other personal data and were accordingly entitled to the protection of this information against exfiltration or unauthorized disclosure.

146.    Defendants intentionally invaded Plaintiffs' and State Subclass members' privacy interests by deliberately designing devices and programs that surreptitiously obtain, improperly gain knowledge of, review, retain, package, and monetize their geolocation and other data.

147.    Defendants' unauthorized acquisition and collection of Plaintiffs' and Class members' geolocation and other personal data is highly offensive to a reasonable person. The continued nonconsensual surveillance of an individual in their private capacity, as Defendants have done and continue to do, represents a fundamental violation of personal privacy, freedom, and autonomy. It is not simply an intentional intrusion but a profound and egregious infringement upon the most personal and sacred aspects of one's life. Plaintiffs have unknowingly been subjected to constant observation while they go about their days, which destabilizes the very essence of personal liberty.

148.    Defendants' conduct exploited Plaintiffs' phone in order to record and transmit Plaintiffs' highly sensitive and personally identifiable data and behavior.

149.    Defendants' willful and intentional use of Plaintiffs' and State Subclass members' location and other personal data constitutes an intentional interference with Plaintiffs' and the State Subclass members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns of a kind that would be highly offensive to a reasonable person.

150.    Defendants intentionally and willfully acquired Plaintiffs' private, sensitive and de-anonymized data. Defendants had notice and knew that their practices would cause injury to Plaintiffs and State Subclass members.

151.    Defendants' conduct constitutes and, at all relevant times constituted, serious and highly offensive invasions of privacy, as Defendants either did not disclose at all, or failed to make an effective disclosure, that they would record, collect, capture, take and make use of Plaintiffs' and State Subclass members' location and other personal data.

152.    Defendants profited from Plaintiffs' and State Subclass members' data without compensating them. Plaintiffs and State Subclass members did not receive any compensation in return for the improper use of their personal data. Defendants deprived Plaintiffs and State Subclass members of the right to control how their personal information is collected, used, or disseminated and by whom.

153.    Plaintiffs, on behalf of themselves and State Subclass members, seek compensatory damages for Defendants' invasion of privacy, which includes the value of the privacy interest invaded by Defendants, loss of time, money, and opportunity costs, plus prejudgment interest, and costs.

154.    Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and State Subclass members since their Private Information is still maintained by Defendants.

155.    Plaintiffs and State Subclass members have no adequate remedy at law for the injuries relating to Defendants' continued possession of their PII and other personal data. A judgment for monetary damages will not undo Defendants' use of Plaintiffs' and State Subclass members' ill-gotten data and subsequently trained algorithms.

156.    Plaintiffs, on behalf of themselves and State Subclass members, further seek injunctive relief to enjoin Defendants from further intruding into the privacy and confidentiality of Plaintiffs' and State Subclass members' PII and other data, disgorgement of this ill-gotten data and any subsequently trained or informed algorithms, and to adhere to its common law, contractual, statutory, and regulatory duties.

1

## COUNT SIX

## ALABAMA DECEPTIVE TRADE PRACTICE ACT

## ALA. CODE §§ 8-19-1, et seq.

(ON BEHALF OF THE ALABAMA SUBCLASS)

157.    The Alabama Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Alabama Subclass repeat and reallege Paragraphs 1-82, as if fully alleged herein.

158.    Plaintiff and the Alabama Subclass members are each a "consumer" as defined in Ala. Code § 8-19-3.

159.    Defendants are each a "person" as defined by Ala. Code § 8-19-3.

160.    Defendants are each engaged in "trade or commerce" affecting the people of Alabama by advertising, offering for sale, selling, or distributing goods and services in the State of Alabama. *See* Ala. Code § 8-19-3.

161.    Defendants engaged in unfair, unconscionable, unlawful, and/or deceptive acts and practices in conducting trade and commerce in violation of Ala. Code § 8-19-3.

162.    Defendants engaged in unfair, unconscionable, unlawful, and/or deceptive acts and practices in conducting trade and commerce in violation of Ala. Code § 8-19-5, including:

a. Intercepting, collecting, using, and selling Plaintiff's and Alabama Subclass members' geolocation and other data without obtaining their consent;

b. Omitting, suppressing, and concealing the material fact that Defendants were intercepting, collecting, using, and monetizing Plaintiff's and Alabama Subclass members' data, for Defendants' own financial and commercial benefit;

c. Omitting, suppressing, and concealing material facts regarding the functionality of Defendants' SDK and the associated mobile applications with respect to the privacy of consumers; and

d. Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiff's and Alabama Subclass members' data, including location data.

CLASS ACTION COMPLAINT
(Case No.              )

31

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

163.    These misrepresentations, omissions, and/or concealments constitute violations of Ala. Code § 8-19-5 (5), (7), (9) and (27).

164.    Defendants acted intentionally, knowingly, and maliciously to violate the Act, and recklessly disregarded Plaintiff's and Alabama Subclass members' rights, because Defendants intentionally intercepted, collected, used, and monetized Plaintiff's and Subclass members' data without obtaining their consent.

165.    The fact that Defendants intercepted, collected, used, and monetized Plaintiff's and Alabama Subclass members' data was material to Plaintiff and Alabama Subclass members. This is a fact that reasonable consumers would consider important when choosing to purchase, use or download an application.

166.    Plaintiff and Alabama Subclass members were deceived, and/or could reasonably be expected to be deceived by Defendants' material misrepresentations and/or omissions regarding the functionality of the Ads SDK and associated applications, the security and privacy of their data, and their privacy, to their detriment.

167.    Defendants engaged in unfair and unconscionable conduct in violation of the Act by engaging the conduct alleged herein, including by exfiltrating, manipulating, and monetizing Plaintiff and Alabama Subclass members' data without Plaintiff's and Subclass members' consent.

168.    As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive acts and practices, Plaintiff and Alabama Subclass members have suffered and will continue to suffer injury, including, but not limited to, the loss of privacy, the unauthorized dissemination of their valuable data, and economic harm stemming from Defendants' exploitation of their data.

169.    Defendants' unconscionable and unfair acts and practices caused substantial injury to Plaintiff and Alabama Subclass members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

CLASS ACTION COMPLAINT                     32                Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                           1809 7th Avenue, Suite 1610
                                                                                   Seattle, WA 98101
                                                                                   Telephone: (206) 802-1272
                                                                                   Facsimile: (650) 697-0577

170.    Plaintiff and the Alabama Subclass seek all monetary and non-monetary relief allowed by law, including the greater of (a) actual damages or (b) statutory damages of $100; treble damages; injunctive relief; attorneys' fees, costs, and any other relief that is just and proper.

## COUNT SEVEN
### CALIFORNIA CONSTITUTIONAL INVASION OF PRIVACY
### CALIFORNIA CONSTITUTION, ARTICLE I, SECTION 1
(ON BEHALF OF THE CALIFORNIA SUBCLASS)

171.    The California Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the California Subclass, repeat and reallege Paragraphs 1-82, as if fully alleged herein.

172.    The California Constitution recognizes the right to privacy inherent in all residents of the State and creates a private right of action against private entities that invade that right.

173.    Article I, Section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I, § 1.

174.    The right to privacy was added to the California Constitution in 1972, through Proposition 11 (called the "Right to Privacy Initiative"). Proposition 11 was designed to codify the right to privacy, protecting individuals from invasions of privacy from both the government and private entities alike: "It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us. Fundamental to our privacy is the ability to control circulation of personal information." Ballot Pamp., Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972), argument in favor of Prop. 11, p. 27.

175.    Plaintiffs and California Subclass members have legally protected privacy interests, as recognized by the California Constitution.

CLASS ACTION COMPLAINT
(Case No.                    )

33

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

176.     Plaintiffs and California Subclass members have an interest in precluding Defendants' interception, collection, dissemination and use of their data.

177.     Plaintiffs and California Subclass members had a reasonable expectation of privacy under the circumstances, as they could not have reasonably expected that Defendants would violate state and federal privacy laws and collect, manipulate and use their data. Plaintiffs and California Subclass members were not aware and could not have reasonably expected that Defendants would use applications attached to their phones that would track and transmit their data to third parties without authorization.

178.     Defendants' conduct in secretly intercepting, collecting, disseminating, and using Plaintiffs' and California Subclass members' data is an egregious breach of societal norms and is highly offensive to a reasonable person.

179.     Defendants' conduct was intentional and intruded on Plaintiffs' and California Subclass members' seclusion and use of their personal property.

180.     Plaintiffs and California Subclass members had no knowledge and did not consent or otherwise authorize Defendants to track, collect, obtain, disseminate, or otherwise use their data.

181.     Defendants were unjustly enriched as a result of their invasion of Plaintiffs' and California Subclass members' privacy.

182.     As a direct and proximate result of Defendants' invasion of their privacy, Plaintiffs and California Subclass members were injured and suffered damages, including, but not limited to, the loss of privacy, and economic harm stemming from Defendants' exploitation of their data.

183.     Plaintiffs and California Subclass members are entitled to equitable relief and just compensation in an amount to be determined at trial. Plaintiffs and California Subclass members seek all relief available for the invasion of privacy under the California Constitution, including nominal damages and general privacy damages.

**COUNT EIGHT**
**CALIFORNIA INVASION OF PRIVACY ACT — WIRETAPPING LAW**
**CAL. PEN. CODE §§ 631**
(ON BEHALF OF THE CALIFORNIA SUBCLASS)

184.    The California Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the California Subclass, repeat and reallege Paragraphs 1-82, as if fully alleged herein.

185.    California Penal Code Section 630 recognizes that "advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

186.    At all relevant times, there was in full force and effect the California Wiretapping Act, Cal. Penal Code § 631.

187.    The California Wiretapping Act prohibits:

> any person . . . who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section[.]

188.    Defendants are each a "person" within the scope of the California Wiretapping Act.

189.    The data and transmissions within, to, and from Plaintiffs' and California Subclass members' phones constitute messages, reports, and/or communications, within the scope of Cal. Penal Code § 631(a), as they are transfers of signals, data, and intelligence transmitted by a wire, line, or cable system.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

190.    As alleged herein, Defendants intercepted, in real time and as they were transmitted, the contents of communications, and have diverted those communications to itself without consent.

191.    Defendants intercepted these data transmissions by diverting them to its own servers, unbeknownst to Plaintiffs and California Subclass members

192.    As detailed herein, the electronic communications detailed above that Defendants intercepted are tied to individual persons, are easily re-identified through use of MAIDs and other identifiers, and are for Defendants' purposes, not anonymous.

193.    Defendants' SDK and associated mobile applications constitute a machine, instrument, or contrivance that taps or makes unauthorized connection to Plaintiffs' and California Subclass members' mobile phone communication system.

194.    Plaintiffs and California Subclass members have a reasonable expectation of privacy within their homes, in their doctor's office, and while going about their day, and Plaintiffs and California Subclass members reasonably expected privacy while driving their vehicles and walking about their daily lives. Further, there is a reasonable expectation that their location and other data are private.

195.    In further violation of the California Wiretapping Act, Defendants have intentionally used or endeavored to use the contents of the communications described above knowing or having reason to know that the information was obtained through unlawful interception.

196.    Defendants have used the contents of the communications described above by monetizing Plaintiffs' and Class members' personal data, to enhance their targeted advertising, personalized product recommendations, and strategic pricing optimization for their own financial and commercial benefit, obtaining substantial profit.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

197. Defendants knew or should have known that the detailed information they used was captured in secret in violation of the Act for the following reasons, among others that will become known through discovery:

       a.     The lack of public knowledge about Defendants' collection and sharing practices until at least January 2025;

       b.     The fact that Defendants continue to collect after it was publicized that collection was secret/happening without consent or knowledge; and

       c.     The nature of the data as such that it had to be obtained via a wiretap.

198. Upon information and belief, Defendants disclose and unlawfully obtain data for their own financial gain to this day.

199. At all relevant times, Plaintiffs and California Subclass members were not aware that Defendants were intercepting and recording their data, and therefore could not provide consent to have any part of their communications intercepted and recorded, transmitted or used.

200. Neither Defendants nor any other person informed Plaintiffs and California Subclass members that Defendants were intercepting and transmitting their data. Plaintiffs and California Subclass members did not know Defendants were intercepting and recording their data, as such they could not and did not consent for their data to be intercepted and/or used by Defendants.

201. As a direct and proximate result of Defendants' violations of the Wiretapping Act, Plaintiffs and California Subclass members were injured and suffered damages, a loss of privacy, and loss of the value of their personal information in an amount to be determined at trial.

202. Defendants were unjustly enriched by their violations of the Wiretapping Act.

203. Pursuant to California Penal Code Section 637.2, Plaintiffs and California Subclass members have been injured by Defendants' violations of the Wiretapping Act, and seek damages for the greater of $5,000 or three times the amount of actual damages, and injunctive relief, plus reasonable attorneys' fees and costs

CLASS ACTION COMPLAINT
(Case No.                    )

37

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

1
2
3

**COUNT NINE**
**CALIFORNIA INVASION OF PRIVACY ACT — ELECTRONIC TRACKING
DEVICE**
**CAL. PEN. CODE §§ 637.7**
(ON BEHALF OF THE CALIFORNIA SUBCLASS)

4
5
6

204.    The California Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the California Subclass, repeat and reallege Paragraphs 1-82, as if fully alleged herein.

7
8

205.    California Penal Code Section 637.7 prohibits any person from using an electronic tracking device to determine the location or movements of any person.

9

206.    Defendants are each a "person" within the scope of CIPA.

10
11
12
13
14
15

207.    Amazon's Ads SDK covertly integrated within associated mobile applications and downloaded onto Plaintiffs' and California Subclass members' phones is an "electronic tracking device" as defined by CIPA as it is a device that is integrated into the user's phone and reveals the user's location, movement, and other data by the transmission of electronic signals through the intercept, collection, and dissemination of Plaintiffs' and California Subclass members' location information.

16
17
18

208.    Defendants violated Cal. Penal Code § 637.7 by attaching Defendants' SDK to Plaintiffs' and California Subclass members' phones and thereby intercepting, collecting, taking, storing, using, and disseminating Plaintiffs' and California Subclass members' data.

19
20
21

209.    Neither Defendants nor any other person informed Plaintiffs and California Subclass members or meaningfully disclosed that Defendants integrated their SDK, an electronic tracking device, into Plaintiffs' and California Subclass members' phones.

22
23

210.    The collection of Plaintiffs' and California Subclass members' data without full and informed consent violated and continues to violate Cal. Penal Code § 637.7.

24
25
26

211.    As a direct and proximate result of Defendants' violations, Plaintiffs and California Subclass members were injured and suffered damages, a loss of privacy, and loss of the value of their personal information in an amount to be determined at trial.

CLASS ACTION COMPLAINT
(Case No.                    )

38

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

212.    Pursuant to Cal. Pen. Code Section 637.2, Plaintiffs and California Subclass members have been injured by Defendants' violations of the CIPA and seek damages for the greater of $5,000 or three times the amount of actual damages, and injunctive relief, plus reasonable attorneys' fees and costs.

### COUNT TEN
### CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT
### CAL. PEN. CODE §§ 502, *et seq.*
### (ON BEHALF OF THE CALIFORNIA SUBCLASS)

213.    The California Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the California Subclass, repeat and reallege Paragraphs 1-82, as if fully alleged herein.

*214.*    The California legislature enacted the Computer Data Access and Fraud Act ("CDAFA") to "expand the degree of protection afforded to individuals . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). The enactment of CDAFA was motivated by the finding that "the proliferation of computer technology has resulted in a concomitant proliferation of . . . unauthorized access to computers, computer systems, and computer data." *Id.*

215.    The CDAFA provides a private right of action to the "owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subsection (c)." Cal. Penal Code § 502(e).

216.    Defendants' SDK and associated mobile applications on Plaintiffs' and California Subclass members' phones constitute "computers" within the scope of the CDAFA. Plaintiffs and California Subclass members are owners and/or lessees of the computers or computer systems, their phones.

217.    Defendants violated the following sections of the CDAFA:

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

a.      Section 502(c)(1), which makes it unlawful to "knowingly access[] and without permission . . . use[] any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data;"

b.      Section 502(c)(2), which makes it unlawful to "knowingly access[] and without permission take[], cop[y], or make[] use of any data from a computer, computer system, or computer network, or take[] or cop[y] any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network;"

c.      Section 502(c)(6), which makes it unlawful to "knowingly and without permission provide[] or assist[] in providing a means of accessing a computer, computer system, or computer network in violation of this section;"

d.      Section 502(c)(7), which makes it unlawful to "knowingly and without permission access[] or cause[] to be accessed any computer, computer system, or computer network."

218.    As alleged herein, the electronic communications transmitted within, to, and from Plaintiffs' and California Subclass members' phones are stored in electronic components of those phones.

219.    Mobile phones, are facilities through which electronic communication services are provided because they provide users, such as Plaintiffs and California Subclass members, the ability to send and receive electronic communications including related to their personal data.

220.    As alleged herein, there is a reasonable expectation of privacy within a person's home, at their doctor's office, and at various points while going through daily life, and Plaintiffs and California Subclass members reasonably expected this privacy. Further, there is a reasonable expectation that the interactions and communications between user and phone, *i.e.*, personal data are private.

221.    Common understanding and experience regarding how mobile phones work create a reasonable expectation that Defendants would not access the electronic communications described above that are stored in Plaintiffs' and California Subclass members' phones.

222.    Defendants knowingly accessed Plaintiffs' and California Subclass members' computers and/or computer systems without their permission, and thereby intercepted, took, copied and made use of the data concerning Plaintiffs and California Subclass members.

223.    Defendants intercepted, collected, disseminated and used Plaintiffs' and California Subclass members' data as part of a scheme to deceive and defraud Plaintiffs and California Subclass members, and to wrongfully and unjustly enrich itself at the expense of Plaintiffs and California Subclass members.

224.    Defendants knowingly accessed Plaintiffs' computers and/or computer systems without Plaintiffs' and California Subclass members' informed consent.

225.    Defendants accessed these stored electronic communications in addition to and separately from intercepting other electronic communications transmitted in real time.

226.    As detailed herein, the data contained in the electronic communications detailed above that Defendants accessed are tied to individual drivers, MAIDS, and are not anonymized.

227.    Defendants' conduct was willful and intentional, and invaded Plaintiffs' and California Subclass members' expectations of privacy.

228.    Defendants were unjustly enriched by intercepting, acquiring, taking, or using Plaintiffs' and California Subclass members' data without their permission, and using it for financial benefit. Defendants have been unjustly enriched in an amount to be determined at trial.

229.    The communications accessed by Defendants in violation of Cal. Penal Code § 502 have significant value, evidenced by the profits that Defendants have obtained from their targeted advertising, product recommendations, and pricing optimization, and as evidenced by the significant value of the aggregated data for various applications.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

230.    Because of Defendants' conduct, Plaintiffs and California Subclass members have forever lost the value of their data, their privacy interest in the data, and their control over its use.

231.    As a direct and proximate result of Defendants' violations of the CDAFA, Plaintiffs and California Subclass members suffered damages. Plaintiffs and California Subclass members suffered actual injuries, including but not limited to (a) damage to and diminution of the value of their personal information; (b) violation of their privacy rights; and (c) the likelihood of future misuse of their private information.

232.    Pursuant to CDAFA Section 502(e)(1), Plaintiffs and California Subclass members seek compensatory, injunctive and equitable relief in an amount to be determined at trial.

233.    Pursuant to CDAFA Section 502(e)(2), Plaintiffs and California Subclass members seek an award of reasonable attorneys' fees and costs.

234.    Pursuant to CDAFA Section 502(e)(4), Plaintiffs and California Subclass members seek punitive or exemplary damages for Defendants' willful violations of the CDAFA.

<u>**COUNT ELEVEN**</u>
**CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. CIV. CODE §§ 17200, *et seq.***
(ON BEHALF OF THE CALIFORNIA SUBCLASS)

235.    The California Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the California Subclass, repeat and reallege Paragraphs 1-82, as if fully alleged herein.

236.    The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*, prohibits, *inter alia*, "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

237.    Defendants are each a "person" as defined by Cal. Bus. & Prof. Code § 17201.

238.    Defendants violated the UCL by engaging in business acts and practices which are unlawful, unconscionable, and unfair under the UCL.

CLASS ACTION COMPLAINT                                    42                Cotchett, Pitre & McCarthy, LLP
(Case No.                      )                                                                    1809 7th Avenue, Suite 1610
                                                                                                              Seattle, WA 98101
                                                                                                              Telephone: (206) 802-1272
                                                                                                              Facsimile: (650) 697-0577

239.     Defendants' acts and practices are unlawful because Defendants violated and continue to violate California common law, constitutional, and statutory rights to privacy, including but not limited to the California Constitution Article I, Section 1, CIPA, CDAFA, and CLRA.

240.     Defendants engaged in unfair, unconscionable, unlawful, and/or deceptive acts and practices in conducting trade and commerce in violation of the UCL by:

a.     Intercepting, collecting, using, and selling Plaintiffs' and California Subclass members' data, including location data, without obtaining their consent;

b.     Omitting, suppressing, and concealing the material fact that Defendants were intercepting, collecting, using, and monetizing Plaintiffs' and California Subclass members' data for Defendants' own financial and commercial benefit;

c.     Omitting, suppressing, and concealing the material fact that Defendants collected, manipulated, used, and monetized Plaintiffs' and California Subclass members' data for their own financial and commercial benefit;

d.     Omitting, suppressing, and concealing material facts regarding the functionality of Defendants' SDK and associated mobile applications with respect to location tracking and the privacy of consumers;

e.     Misrepresenting the purpose of Defendants' SDK and associated mobile applications that they would protect the privacy of Plaintiffs' and California Subclass members' data, including that it would not intercept, collect, use, or monetize data without consumers' express consent; and

f.     Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiffs' and California Subclass members' data.

241.     Defendants acted intentionally, knowingly, and maliciously to violate the Act, and recklessly disregarded Plaintiffs' and California Subclass members' rights, because Defendants

intentionally intercepted, collected, used, and sold Plaintiffs' and Subclass members' data, including location data, without obtaining their consent.

242.    The fact that Defendants intercepted, collected, used, and sold Plaintiffs' and Subclass members' data was material to Plaintiffs and California Subclass members. This is a fact that reasonable consumers would consider important when choosing to download any of the thousands of mobile applications using Defendants' SDK.

243.    Plaintiffs and California Subclass members were deceived and/or could reasonably be expected to be deceived by Defendants' material misrepresentations and omissions regarding the functionality of their Ads SDK and associated mobile applications, the security and privacy of their data, and their privacy.

244.    In the course of their business, Defendants repeatedly and regularly engaged in the unlawful, unconscionable, and unfair acts or practices, which caused serious harm to consumers, including Plaintiffs and California Subclass members.

245.    Plaintiffs' and the California Subclass' data, including location data, has tangible value. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs' and California Subclass members' data is in the possession of third parties who have used and will use such data for their commercial benefit

246.    As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive acts and practices, Plaintiffs and California Subclass members have suffered and will continue to suffer injury, including, but not limited to: loss of privacy; unauthorized dissemination of their valuable data; damage to and diminution of the value of their personal information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

247.    Plaintiffs and California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unlawful, unfair, and unconscionable practices or use of their data; declaratory relief; reasonable attorneys'

fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**COUNT TWELVE**
**CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**CONN. GEN. STAT. §§ 42-110a, *et seq.***
(ON BEHALF OF THE CONNECTICUT SUBCLASS)

248.    The Connecticut Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Connecticut Subclass, repeats and realleges Paragraphs 1-82 as if fully alleged herein.

249.    The Connecticut Unfair Trade Practices Act ("CUPTA"), Conn. Gen. Stat. § 41-110a, et seq., prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. 7 41-110b(a).

250.    Plaintiff, Connecticut Subclass members, and Defendants are each a "person" as defined in Conn. Gen. Stat. Ann. § 42-110a.

251.    Amazon engaged in unfair, unconscionable, unlawful, and/or deceptive acts and practices in conducting trade and commerce in violation of the CUTPA:

a.  Intercepting, collecting, using and monetizing Plaintiff's and Connecticut Subclass members' data without obtaining their consent;

b.  Omitting, suppressing, and concealing the material fact that Amazon was intercepting, collecting, using, and monetizing Plaintiff's and Connecticut Subclass members' location and other personal data for their own financial and commercial benefit;

c.  Omitting, suppressing, and concealing material facts regarding the functionality of their Ads SDK with respect to the privacy of consumers in their homes, in their doctor's office, and while they go throughout daily life; and

d.  Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiff's and Connecticut Subclass members' data.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

252.     Amazon acted intentionally, knowingly, and maliciously to violate the Act, and recklessly disregarded Plaintiff's and Connecticut Subclass members' rights, because Amazon intentionally intercepted, collected, used, and monetized Plaintiff's and Connecticut Subclass members' data without obtaining their consent.

253.     The fact that Amazon intercepted, collected, used, and sold Plaintiff's and Connecticut Subclass members' data was material to Plaintiff and Connecticut Subclass members. This is a fact that reasonable consumers would consider important when choosing to purchase or download an application.

254.     Plaintiff and Connecticut Subclass members were deceived and/or could reasonably be expected to be deceived by Amazon's material misrepresentations and/or omissions regarding the functionality of the Ads SDK and their privacy to their detriment.

255.     Defendants' trade practices were unconscionable and unfair because they offend public policy as it has been established by statutes, the common law, or otherwise; are immoral, unethical, oppressive or unscrupulous; or cause substantial injury to consumers.

256.     Plaintiff's and the Connecticut Subclass' data has tangible value. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff's and Connecticut Subclass members' property interest in their own data has been substantially impacted.

257.     As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive acts and practices, Plaintiff and Connecticut Subclass members have suffered and will continue to suffer injury, including, but not limited to: loss of privacy; unauthorized monetization of their valuable data; damage to and diminution of the value of their personal information; and the likelihood of future misuse.

258.     Plaintiff and Connecticut Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and reasonable attorneys' fees and costs.

CLASS ACTION COMPLAINT
(Case No.                    )                              46                    Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

## COUNT THIRTEEN
### UNFAIR AND DECEPTIVE TRADE PRACITCES ACT
### FLA. STAT. §§ 501.201, *et seq.*
(ON BEHALF OF THE FLORIDA SUBCLASS)

259.    The Florida Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Florida Subclass, repeats and realleges Paragraphs 1-82, as if fully alleged herein.

260.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*, prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Fla. Stat. § 501.204.

261.    Plaintiff and the members of the Florida Subclass are each a "consumer" as defined in Fla. Stat. Ann. § 501.203.

262.    Defendants are each a "person" as defined in Fla. Stat. Ann. § 504.203.

263.    Defendants each engaged in "trade or commerce" affecting the people of Florida by advertising, offering for sale, selling or distributing goods and services in the State of Florida. Fla. Stat. Ann. § 501.203.

264.    Defendants engaged in unfair, unconscionable, unlawful, and/or deceptive acts and practices in conducting trade and commerce in violation of the FDUTPA by:

a.    Material omissions and/or misrepresentations related to the characteristics of goods or services;

b.    Material omissions and/or misrepresentations as to the standard, quality, or grade of goods or services;

c.    Engaging in other conduct that creates a likelihood of confusion or misunderstanding; and

d.    Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiff's and Florida Subclass members' data.

CLASS ACTION COMPLAINT                                   47                          Cotchett, Pitre & McCarthy, LLP
(Case No.                      )                                                      1809 7th Avenue, Suite 1610
                                                                                     Seattle, WA 98101
                                                                                     Telephone: (206) 802-1272
                                                                                     Facsimile: (650) 697-0577

265. These deceptive statements, misrepresentations, omissions, concealments and acts constitute violations of Fla. Stat. 7 501.204(1).

266. Defendants acted intentionally, knowingly, and maliciously to violate FDUTPA, and recklessly disregarded Plaintiff's and Florida Subclass members' rights, because Defendants intentionally intercepted, collected, used, and monetized Plaintiff's and Florida Subclass members' data without obtaining their consent.

267. The fact that Defendants intercepted, collected, used, and monetized Plaintiff's and Florida Subclass members' data was material to Plaintiff and Florida Subclass members. This is a fact that reasonable consumers would consider important when choosing download, use, or purchase an application.

268. Plaintiff and Florida Subclass members were deceived and/or could reasonably be expected to be deceived by Defendants' material misrepresentations and omissions regarding the functionality of the Ads SDK and the security and privacy of their data to their detriment.

269. As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive acts and practices, Plaintiff and Florida Subclass members have suffered and will continue to suffer injury, including, but not limited to: loss of privacy; unauthorized dissemination of their valuable data; damage to and diminution of the value of their personal information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

270. Plaintiff and Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and reasonable attorneys' fees and costs.

CLASS ACTION COMPLAINT
(Case No.            )

48

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

**COUNT FOURTEEN**
**FLORIDA SECURITY OF COMMUNICATIONS ACT**
**FLA. STAT. §§ 934.01, *et seq*.**
(ON BEHALF OF THE FLORIDA SUBCLASS)

271.    The Florida Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Florida Subclass, repeats and realleges Paragraphs 1-82, as if fully alleged herein.

272.    The Florida Security of Communications Act ("FSCA"), Fla. Stat. § 934.01, *et seq.*, states that any person who "[i]ntentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication" is subject to liability. Fla. Stat. § 934.03(1)(a).

273.    Plaintiff, including members of the Florida Subclass, and Defendants each constitute a "person" as defined in Fla. Stat. § 934.02.

274.    The data and transmissions within, to, and from Plaintiff's and Class members' phones constitute "electronic communications," as defined by Fla. Stat. § 934.02, as they are transfers of signals, data, and intelligence transmitted by electromagnetic, photoelectronic or photooptical systems that affect intrastate, interstate or foreign commerce.

275.    The FSCA prohibits any person from intentionally disclosing, or endeavoring to disclose, to any other person "the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of [the FSCA]." Fla. Stat. Ann. § 934.03(c).

276.    The FSCA prohibits any person from intentionally using, or endeavoring to use, "the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of [the FSCA.]" Fla. Stat. Ann. § 934.03(d).

CLASS ACTION COMPLAINT                              49                    Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                                                    1809 7th Avenue, Suite 1610
                                                                                          Seattle, WA 98101
                                                                                          Telephone: (206) 802-1272
                                                                                          Facsimile: (650) 697-0577

277.    As alleged herein, Defendants intercepted, in real time and as they were transmitted, the contents of electronic communications, and diverted those communications to itself without consent.

278.    As detailed herein, the electronic communications detailed above that Defendants intercepted are tied to individuals and are not anonymized.

279.    Plaintiff and Florida Subclass members have a reasonable expectation of privacy within their homes, in their doctor's office, and at various points throughout their days, and Plaintiff and Florida Subclass members reasonably expected privacy in these and other locations. Further, there is a reasonable expectation that the interactions between a consumer and their phone, including their personal data, are private.

280.    Defendants intercepted these electronic communications in real time separately from and in addition to accessing data stored in Plaintiff's and Florida Subclass members' MAIDs.

281.    Defendants intercepted these data transmissions by diverting them, during flight, to their own servers, unbeknownst to Plaintiff and Florida Subclass members.

282.    As detailed herein, the electronic communications detailed above that Defendants intercepted are tied to individuals and are not anonymized.

283.    In further violation of the FSCA, Defendants have used or attempted to use the contents of the communications described above while knowing or having reason to know that the information was obtained through interception in violation of the FSCA.

284.    In further violation of the FSCA, Defendants have used the information derived from the communications described above to create products they market, license, and sell, including targeted advertising and other marketing services including pricing optimization and strategic product recommendations using Plaintiff's and the Florida Subclass members' data.

285.    Upon information and belief, Defendants continue to use unlawfully obtained data for their own financial gain.

286.    Plaintiff and Florida Subclass members did not consent or otherwise authorize Defendants to intercept, manipulate, or use their communications.

287.    As a result, Plaintiff and Florida Subclass members have suffered harm and injury due to the interception, disclosure, and/or use of communications containing their private and personal information.

288.    Defendants' violations of the FSCA have directly and proximately caused Plaintiff and the Florida Subclass to suffer harm and injury due to the interception, disclosure, and/or use of their private and personal information in an amount to be ascertained at trial.

289.    Pursuant to Fla. Stat. § 934.10(1), Plaintiff and Florida Subclass members have been damaged by the interception, disclosure, and/or use of their communications in violation of the FSCA and are entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and the Florida Subclass or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

## COUNT FIFTEEN
### ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 ILL. COMP. STAT. §§ 505, *et seq.*
(ON BEHALF OF THE ILLINOIS SUBCLASS)

290.    The Illinois Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and reallege Paragraphs 1-82, as if fully alleged herein.

291.    Defendants are each a "person" as defined by 815 Ill. Comp. Stat. §§ 505/1(c).

292.    Plaintiffs and Illinois Subclass members are "consumers" as defined by 815 Ill. Comp. Stat. §§ 505/1(e).

293.    Defendants' conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 Ill. Comp. Stat. § 505/1(f).

294.     Defendant's deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2, include:

a.  Material omissions and/or misrepresentations related to the characteristics of goods or services;

b.  Material omissions and/or misrepresentations as to the standard, quality, or grade of goods or services;

c.  Engaging in other conduct that creates a likelihood of confusion or misunderstanding; and

d.  Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiffs' and Illinois Subclass members' data.

295.     Defendants acted intentionally, knowingly, and maliciously to violate the Act, and recklessly disregarded Plaintiffs' and Illinois Subclass members' rights, because Defendants intentionally intercepted, collected, used, and monetized Plaintiff's and Illinois Subclass members' data without obtaining their consent.

296.     The fact that Defendants intercepted, collected, used, and monetized Plaintiffs' and Illinois Subclass members' data was material to Plaintiffs and Illinois Subclass members. This is a fact that reasonable consumers would consider important when downloading and using applications.

297.     Plaintiffs and Illinois Subclass members were deceived and/or could reasonably be expected to be deceived by Defendants' material misrepresentations and omissions regarding the functionality of Defendants' Ads SDK and associated applications and the security and privacy of their data to their detriment. Defendants intended to mislead Plaintiffs and Illinois Subclass members and induce them to rely on their misrepresentations and/or omissions.

298.     In the course of its business, Defendants engaged in activities with a tendency or capacity to deceive.

299.     Had Defendants disclosed to Plaintiffs and Illinois Subclass members that it was collecting and monetizing data, it would have been unable to convince many thousands of

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

application developers to integrate the Ads SDK. Instead, in order to drastically increase the number of ads served to customers and to increase their reach with third-party applications, Defendants did not disclose material terms or obtain actual, written consent for them. Instead, Defendants omitted material facts from consumers and misrepresented the actual purpose of its programs. Accordingly, Plaintiffs and the Illinois Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

300.    Defendants are engaged in unfair and unconscionable conduct in violation of the Act by engaging in the conduct alleged herein, including by exfiltrating and monetizing Plaintiffs' and Illinois Subclass members' data without their consent.

301.    Plaintiffs' and the Illinois Subclass' data has tangible value. As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive acts and practices, Plaintiffs and Illinois Subclass members have suffered and will continue to suffer injury, including, but not limited to: loss of privacy; unauthorized dissemination of their valuable data; damage to and diminution of the value of their personal information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

302.    Plaintiffs and Illinois Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, injunctive relief, and reasonable attorneys' fees and costs.

**COUNT SIXTEEN**
**ILLINOIS WIRETAPING, ELECTRONIC SURVEILLANCE, AND INTERCEPTION OF COMMUNICATIONS LAW,**
**720 ILCS 5/14-1, *et seq*.**
**(ON BEHALF OF THE ILLINOIS SUBCLASS)**

303.    The Illinois Plaintiffs identified above ("Plaintiffs," for purposes of this Count), individually and on behalf of the Illinois Subclass, repeat and reallege Paragraphs 1-82, as if fully alleged herein.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

304.    The Illinois Eavesdropping law, 720 ILCS 5/14-1, et seq., prohibits, *inter alia*, any person from knowingly or intentionally "intercept[ing], record[ing], or transcrib[ing], in a surreptitious manner, any private electronic communication" without the consent of all parties. 720 ILCS 5/14-2(a)(3).

305.    The Illinois Eavesdropping law also prohibits any person from using or disclosing "any information which he or she knows or reasonably should know was obtained" in violation of the Act, unless such use or disclosure is done "with the consent of all of the parties." 720 ILCS 5/14-2(a)(5).

306.    Defendants are each a "person" within the scope of the Illinois Eavesdropping law.

307.    The data and transmissions within, to, and from Plaintiffs' and Illinois Subclass members' phones constitute "private electronic communications" as defined by 720 ILCS 5/14-1(e), as they are transfers of signals, data, and intelligence transmitted by electromagnetic, photoelectronic or photooptical systems.

308.    Plaintiffs and Illinois Subclass members have a reasonable expectation of privacy within their homes, at their doctor's office, and at various points throughout their day, and Plaintiffs and Illinois Subclass members reasonably expected privacy while in their homes, at their doctor's office, and at various points throughout their day.

309.    As alleged herein, Defendants have intercepted, in real time and as they were transmitted, the contents of private electronic communications, and diverted those communications to itself without consent.

310.    Defendants intercepted these data transmissions by diverting them, during flight through Defendants' Ads SDK or similar device, to their own servers, unbeknownst to Plaintiffs and Illinois Subclass members.

311.    As detailed herein, the electronic communications detailed above that Defendants intercepted are tied to individuals and are not anonymized.

54

312.    In further violation of the Illinois Eavesdropping law, Defendants intentionally used or endeavored to use the contents of the communications described above knowing or having reason to know that the information was obtained through interception in violation of the Act.

313.    In further violation of the FSCA, Defendants have used the information derived from the communications described above to create products they market, license, and sell, including targeted advertising and other marketing services including pricing optimization and strategic product recommendations using Plaintiff's and the Florida Subclass members' data.

314.    Plaintiffs and Illinois Subclass members did not consent or otherwise authorize Defendants to intercept, monetize, or use their communications.

315.    As a result, Plaintiffs and Illinois Subclass members have suffered harm and injury due to the interception and/or use of communications containing their private and personal information.

316.    Pursuant to 720 ILCS 14-6, Plaintiffs and Illinois Subclass members have been damaged by the interception, monetization, and/or use of their communications in violation of the Eavesdropping law and are entitled to: (1) damages, in an amount to be determined at trial; (2) punitive damages; (3) injunctive relief prohibiting Defendants from further eavesdropping; and (4) reasonable attorneys' fees and other litigation costs reasonably incurred.

## COUNT SEVENTEEN
## MASSACHUSETTS CONSUMER PROTECTION ACT
## MASS. GEN. LAWS ANN. §§ 1, *et seq.*
### (ON BEHALF OF THE MASSACHUSETTS SUBCLASS)

317.    The Massachusetts Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Massachusetts Subclass, repeats and realleges Paragraphs 1-82, as if fully alleged herein.

318.    Plaintiff and Massachusetts Subclass members are "persons" as defined by Mass. Gen. Laws Ann. Ch. 93A, (7 1(a).

CLASS ACTION COMPLAINT                55          Cotchett, Pitre & McCarthy, LLP
(Case No.                    )                              1809 7th Avenue, Suite 1610
                                                                      Seattle, WA 98101
                                                                      Telephone: (206) 802-1272
                                                                      Facsimile: (650) 697-0577

319.     Defendants are engaged in "trade or commerce" as defined by Mass. Gen. Laws Ann. Ch. 93A, § 1(b), by offering goods and services and engaging in business practices that directly or indirectly affect the people of Massachusetts.

320.     Defendants are engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Mass. Gen. Laws Ann. Ch. 93A, § 2(a).

321.     Amazon's unfair and deceptive acts or practices include:

a.   Material omissions and/or misrepresentations related to the characteristics of goods or services;

b.   Material omissions and/or misrepresentations as to the standard, quality, or grade of goods or services;

c.   Engaging in other conduct that creates a likelihood of confusion or misunderstanding; and

d.   Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiff's and Massachusetts Subclass members' data.

322.     Amazon acted intentionally, knowingly, and maliciously to violate the Act, and recklessly disregarded Plaintiff's and Massachusetts Subclass members' rights, because Amazon intentionally intercepted, collected, used, and monetized Plaintiff's and Massachusetts Subclass members' sensitive geolocation and other data without obtaining their consent.

323.     The fact that Amazon intercepted, collected, used, and sold Plaintiff's and Massachusetts Subclass members' data was material to Plaintiff and Massachusetts Subclass members. This is a fact that reasonable consumers would consider important when choosing to purchase or download an application.

324.     Plaintiff and Massachusetts Subclass members were deceived and/or could reasonably be expected to be deceived by Amazon's material misrepresentations and omissions regarding the functionality of Defendants' Ads SDK and the security and privacy of their data to their detriment.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

325.     Plaintiff's and the Massachusetts Subclass' geolocation and other data has tangible value. As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive acts and practices, Plaintiffs and Massachusetts Subclass members have suffered and will continue to suffer injury, including, but not limited to: loss of privacy; damage to and diminution of the value of their personal information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

**COUNT EIGHTEEN**
**MASSACHUSETTS WIRETAP ACT**
**MASS. GEN. STAT. 272 §§ 99,** *et seq.*
(ON BEHALF OF THE MASSACHUSETTS SUBCLASS)

326.     The Massachusetts Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Massachusetts Subclass, repeats and realleges Paragraphs 1-82, as if fully alleged herein.

327.     The Massachusetts Wiretap Act ("MWA"), Mass. Gen. Stat. 272 § 99, in relevant part, makes it unlawful for any person to "willfully commit[] an interception, attempt[] to commit an interception, or procure[] any other person to commit an interception or to attempt to commit an interception of any wire or oral communication." Mass. Gen. Stat. 272 § 99(C)(1).

328.     The MWA also makes it unlawful to "willfully disclose[] or attempt[] to disclose" or "willfully use[] or attempt[] to use" the "contents of any wire or oral communication, knowing that the information was obtained through interception." Mass. Gen. Stat. 272 § 99(C)(3)(a), (b).

329.     Defendants are each a "person" as defined by the MWA, which includes "any individual, partnership, association, joint stock company, trust, or corporation." Mass. Gen. Stat. 272 § 99(B)(13).

330.     The MWA defines "wire communication" as "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception." Mass. Gen. Stat. 272 § 99(B)(1).

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

331.    The MWA defines "contents" as any information concerning the existence, contents, substance, purport, meaning, or identity of parties to a communication. Mass. Gen. Stat. 272 § 99(B)(5).

332.    The MWA defines "interception" as "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication[.]" Mass. Gen. Stat. 272 § 99(B)(4).

333.    The MWA defines "intercepting device" as "any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication." Mass. Gen. Stat. 272 § 99(B)(3).

334.    The data and transmissions within, to, and from Plaintiff'S and Massachusetts Subclass members' phones constitute "wire communications," under the MWA as they are communications "made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection." Mass. Gen. Stat. 272 § 99(B)(1).

335.    As alleged herein, Amazon has intercepted, in real time and as they were transmitted, the contents of electronic communications, and have diverted those communications to itself without consent.

336.    As detailed herein, the electronic communications detailed above that Amazon has intercepted are tied to individuals and not anonymized.

337.    Amazon intercepted these data transmissions by diverting them, during flight to their own servicers, unbeknownst to Plaintiff and Massachusetts Subclass members.

338.    In violation of the MWA, Amazon intercepted the communications by diverting them, during flight, to their own servers, unbeknownst to drivers.

339.    Plaintiff and Massachusetts Class members have a reasonable expectation of privacy within their home, in their doctor's office, and at various points throughout their day,

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

and Plaintiff and Class members reasonably expected privacy in these locations. Further, there is a reasonable expectation that the interactions between a consumer and their phone are private.

340.    Common understanding and human experience of how phones function create a reasonable expectation that Amazon would not surreptitiously intercept and divert the detailed and personal electronic communications described above.

341.    In further violation of the MWA, Amazon has used or attempted to use the contents of the communications described above while knowing that the information was obtained through interception in violation of the MWA. Mass. Gen. Stat. 272 § 99(Q); *see Pine v. Rust*, 404 Mass. 411, 413–414, 535 N.E.2d 1247 (1989).

342.    Specifically, Defendants have used the information derived from the communications described above to create products they market, license, and sell, including targeted advertising and other marketing services including pricing optimization and strategic product recommendations using Plaintiff's and the Florida Subclass members' data.

343.    Plaintiff and Massachusetts Subclass members have suffered harm and injury as a direct and proximate result of Defendants' interception and/or use of their private and personal information.

344.    The MWA grants a civil remedy to aggrieved persons. § 99(Q).

345.    Plaintiff and Massachusetts Subclass members are each an "aggrieved person" within the meaning of the MWA as they are each "a party to an intercepted wire or oral communication . . . who would otherwise have standing to complain that [their] personal or property interest or privacy was invaded in the course of an interception." Mass. Gen. Stat. 272 § 99(B)(6).

346.    Plaintiffs and Massachusetts Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, liquidated damages, punitive damages, reasonable attorney's fees and costs.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

**COUNT NINETEEN**
**MICHIGAN CONSUMER PROTECTION ACT**
**MICH. COMP. LAWS ANN. §§ 445.901,** *et seq.*
(ON BEHALF OF THE MICHIGAN SUBCLASS)

347.    The Michigan Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Massachusetts Subclass, repeats and realleges Paragraphs 1-82, as if fully alleged herein.

348.    Amazon and Plaintiff are each "person[s]" as defined by Mich. Comp. Laws Ann. § 445.902(1)(d).

349.    Amazon engaged in "trade or commerce" as defined by Mich. Comp. Laws Ann. § 445.902(1)(g).

350.    Amazon engaged in trade or commerce in Michigan and/or directly or indirectly affecting the people of Michigan.

351.    Amazon engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including under the following provisions:

a.    Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer. Mich. Comp. Laws Ann. § 445.903(1)(s);

b.    Failing to reveal facts that were material to a transaction in light of representations of fact made in a positive manner. Mich. Comp. Laws Ann. § 445.903(1)(cc).

352.    Amazon's unfair, unconscionable, and deceptive practices included the following conduct:

a.    Material omissions and/or misrepresentations related to the characteristics of goods or services;

b.    Material omissions and/or misrepresentations as to the standard, quality, or grade of goods or services;

CLASS ACTION COMPLAINT                    60                 Cotchett, Pitre & McCarthy, LLP
(Case No.              )                                                 1809 7th Avenue, Suite 1610
                                                                                    Seattle, WA 98101
                                                                                    Telephone: (206) 802-1272
                                                                                    Facsimile: (650) 697-0577

c.  Engaging in other conduct that creates a likelihood of confusion or misunderstanding; and

d.  Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiff's and Massachusetts Subclass members' data.

353.    Amazon acted intentionally, knowingly, and maliciously to violate the Act, and recklessly disregarded Plaintiff's and Michigan Subclass members' rights, because Amazon intentionally intercepted, collected, used, and monetized Plaintiff's and Michigan Subclass members' data without obtaining their consent.

354.    The fact that Amazon intercepted, collected, used, and monetized Plaintiffs' and Michigan Subclass members' data was material to Plaintiffs and Michigan Subclass members. This is a fact that reasonable consumers would consider important when choosing to purchase or download an application.

355.    Plaintiff and Michigan Subclass members were deceived and/or could reasonably be expected to be deceived by Amazon's material misrepresentations and omissions regarding the functionality of their Ads SDK and the security and privacy of their data to their detriment.

356.    The material facts Amazon misrepresented and/or failed to disclose to Plaintiff and Michigan Subclass members could not reasonably be known by reasonable consumers.

357.    Amazon's unfair, unconscionable, and deceptive practices in the conduct of trade and commerce included entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, where the waiver was not clearly stated and the consumer did not specifically consent to it. Mich. Comp. Laws Ann. § 445.903(1)(t).

358.    Plaintiff's and the Michigan Subclass' data has tangible value. As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive acts and practices, Plaintiff and Michigan Subclass members have suffered and will continue to suffer injury, including, but not limited to: loss of privacy; damage to and diminution of the value of their

personal information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

359.     Plaintiff's and the Michigan Subclass' data was exploited without informed consent. Accordingly, Plaintiff and the Michigan Subclass are entitled to part of Amazon's profits that were generated by their data without informed consent

360.     Plaintiff and the Michigan Subclass seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250 per Plaintiff and Michigan Subclass member, disgorgement, injunctive relief, attorneys' fees and costs, and any other relief that is just and proper.

**COUNT TWENTY**
**NEW YORK GENERAL BUSINESS LAW**
**N.Y. GEN. BUS. LAW §§ 349, *et seq*.**
(ON BEHALF OF THE NEW YORK SUBCLASS)

361.     The New York Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New York Subclass, repeats and realleges Paragraphs 1-82, as if fully alleged herein.

362.     Defendants engaged in deceptive acts or practices in the conduct of their business, trade, and commerce, in violation of N.Y. Gen. Bus. Law § 349. Defendants engaged in deceptive acts and practices by:

a.   Intercepting, collecting, using, and selling Plaintiff's and New York Subclass members' data without obtaining their consent;

b.   Omitting, suppressing, and concealing the material fact that Defendants were intercepting, collecting, using, and monetizing Plaintiff's and New York Subclass members' data for Defendants' own financial and commercial benefit;

c.   Omitting, suppressing, and concealing material facts regarding the functionality of Defendants' Ads SDK and associated applications with respect to the privacy of consumers in their homes and at their doctor's office; and

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

d.  Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiff's and New York Subclass members' data.

363.    Defendants' omissions and misrepresentations were material because they were likely to deceive reasonable consumers into believing that their data would not be exfiltrated or monetized without their knowledge or consent.

364.    Defendants acted intentionally, knowingly, and maliciously to violate N.Y. Gen. Bus. Law § 349, or acted with reckless disregard for the rights of Plaintiff and New York Subclass members.

365.    As a direct and proximate result of Defendants' deceptive and unlawful acts and practices, Plaintiff and New York Subclass members have suffered and will continue to suffer injury, but not limited to: loss of privacy; damage to and diminution of the value of their personal information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

366.    Plaintiff and New York Subclass members have suffered injuries in fact and ascertainable losses of money or property as a result of Defendants' deceptive acts and practices. Plaintiff's and New York Subclass members' data has tangible economic value, which was wrongfully appropriated by Defendants for financial gain.

367.    The public interest and consumers at large were harmed by Defendants' deceptive and unlawful acts, which affected thousands of New York residents.

368.    Plaintiff and New York Subclass members seek all monetary and non-monetary relief available under N.Y. Gen. Bus. Law § 349, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, attorneys' fees, and costs.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

**COUNT TWENTY ONE**
**NEW YORK GENERAL BUSINESS LAW**
**N.Y. GEN. BUS. LAW §§ 899-aa; 899-bb (SHIELD ACT)**
(ON BEHALF OF THE NEW YORK SUBCLASS)

369.    The New York Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the New York Subclass, repeats and realleges Paragraphs 1-82, as if fully alleged herein.

370.    Defendants are businesses that own, license, or maintain computerized data that includes private information as defined by N.Y. Gen. Bus. Law § 899-aa(1)(a). Accordingly, Defendants are subject to the requirements of N.Y. Gen. Bus. Law §§ 899-aa(2) and (3).

371.    Plaintiff's and Class members' data includes private information covered by N.Y. Gen. Bus. Law § 899-aa(1)(b), as it contains sensitive, identifiable information, including records of their location.

372.    Defendants collected and maintained data from Plaintiff and New York Subclass members without informing them of the scope of the data collection or obtaining their consent for its subsequent use and sale to third parties.

373.    Defendants violated N.Y. Gen. Bus. Law §§ 899-aa(2) and (3) by failing to provide timely, accurate, and sufficient notice to Plaintiff and New York Subclass members of the unauthorized collection, use, and monetization of their data.

374.    Defendants' failure to adhere to the administrative and security requirements of the SHIELD Act (N.Y. Gen. Bus. Law § 899-bb(2)) further compromised the security and confidentiality of Plaintiff's and New York Subclass members' private information.

375.    As a direct and proximate result of Defendants' violations of N.Y. Gen. Bus. Law §§ 899-aa and 899-bb, Plaintiff and New York Subclass members suffered damages, including, but not limited to: loss of privacy; damage to and diminution of the value of their personal information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

376.     Plaintiff and New York Subclass members seek all remedies available under N.Y. Gen. Bus. Law § 899-aa(6)(b) and § 899-bb(2), including actual damages, injunctive relief, and any other relief deemed just and proper by the Court.

**COUNT TWENTY TWO**
**VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT,**
**OHIO REV. CODE §§ 1345.01, *et seq*.**
(ON BEHALF OF THE OHIO SUBCLASS)

377.     The Ohio Plaintiff identified above ("Plaintiff," for purposes of this Count) individually and on behalf of the Ohio Subclass, repeats and realleges Paragraphs 1-82, as if fully alleged herein.

378.     Plaintiff and Ohio Subclass members are "persons" as defined by Ohio Rev. Code § 1345.01(B).

379.     Defendants are a "supplier" engaged in "consumer transactions," as defined by Ohio Rev. Code §§ 1345.01(A) and (C), by offering goods and services to consumers in Ohio.

380.     Defendants engaged in unfair and deceptive acts and practices in connection with consumer transactions, in violation of Ohio Rev. Code §§ 1345.02 and 1345.03.

**COUNT TWENTY THREE**
**UNFAIR TRADE PRACTICES AND CONSUMERP ROTECTION LAW**
**73 PA. STAT. §§ 201-1, *et seq*.**
(ON BEHALF OF THE PENNSYLVANIA SUBCLASS)

381.     The Pennsylvania Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Connecticut Subclass, repeats and realleges Paragraphs 1-82, as if fully alleged herein.

382.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCP") makes unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. S.C. Code § 39-5-10(a).

CLASS ACTION COMPLAINT
(Case No.                    )

65

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

383.    Defendants are each a "person" as defined by 73 Pa. Stat. § 201-2(2), which includes corporations, trusts, partnerships, incorporated or unincorporated associations and any other legal entity.

384.    Defendants are each engage in "trade" or "commerce" as defined by 73 Pa. Stat. § 201-2(3), which includes advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of Pennsylvania.

385.    Amazon engaged in unfair trade practices by their material omissions to Plaintiffs and Pennsylvania Subclass members that their movements would be tracked and their personal information would be exfiltrated for Amazon's financial benefit.

386.    These unfair statements, misrepresentations, omissions, and concealments constitute violations of 73 Pa. Stat. § 201-2(4).

387.    By misrepresenting, omitting, and/or concealing crucial information regarding the functionality of Amazon's Ads SDK with respect to the privacy of mobile application users in their homes, in their doctor's office, and throughout their day, Amazon violated 73 Pa. Stat. § 201-2(4)(v), (vii) and (ix).

388.    Plaintiffs and Pennsylvania Subclass members were deceived and/or could reasonably be expected to be deceived by Amazon's material misrepresentations and omissions regarding the functionality of their Ads SDK and thousands of associated mobile applications, the security and privacy of user data, and their privacy to their detriment.

389.    As a direct and proximate result of Defendants' unfair practices, Plaintiffs and Pennsylvania Subclass members have suffered and will continue to suffer injury, losses, and damages, including, but not limited to: loss of privacy; unauthorized dissemination of their valuable data; damage to and diminution of the value of their personal information; and the likelihood of future misuse of their data.

390.    In violating Plaintiffs' and Pennsylvania Subclass members' rights under the Pennsylvania UTPCP as described herein, Defendants acted intentionally, knowingly, and/or with reckless disregard of the rights of Plaintiffs and Pennsylvania Subclass members.

391.    Plaintiffs and Pennsylvania Subclass members seek all monetary and non-monetary relief allowed by law, including equitable relief, actual damages or one hundred dollars ($100), whichever is greater, treble damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT TWENTY FOUR**
**TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT,**
**TEX. BUS. & COM. CODE §§ 17.41**
(ON BEHALF OF THE TEXAS SUBCLASS)

392.    The Texas Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Texas Subclass, repeats and realleges Paragraphs 1-82, as if fully alleged herein.

393.    The Texas Trade Practices-Consumer Protection Act ("Texas TPCPA") "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex. Bus. & Com. Code § 17.44(a).

394.    Defendants are each a "person" as defined by 73 Pa. Stat. § 201-2(2), which includes partnership, corporation, association, or other group, however organized.

395.    Defendants engage in "trade" or "commerce" as defined by Tex. Bus. & Com. Code § 17.45(6), which includes advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of Texas.

396.    Defendants engaged in unfair and deceptive trade practices by representing to Plaintiff and Texas Subclass members, as well as third party applications, that their data would

be kept secure and that data would not be shared, when in fact Defendants regularly and covertly collected detailed consumer data.

397.     These deceptive statements, misrepresentations, and omissions, and concealments constitute violations of Tex. Bus. & Com. Code § 17.46(b).

398.     Defendants violated Tex. Bus. & Com. Code § 17.46(b)(5), (9), and (20) and (24) by:

a.  Omitting, suppressing, and concealing the material fact that Defendants were intercepting, collecting, using, and monetizing Plaintiff's and Texas Subclass members' data for Defendants' own financial and commercial benefit

b.  Omitting, suppressing, and concealing material facts regarding the functionality of Defendants' Ads SDK and associated applications with respect to the privacy of consumers in their homes, at their doctor's office, and throughout their days; and

c.  Misrepresenting or omitting the purpose of Defendants' Ads SDK and associated applications and that it would protect the privacy of Plaintiff's and the Texas Subclass members' data, including that it would not intercept, collect, use, or monetize such data without consumers' express consent.

399.     Plaintiff and Texas Subclass members were deceived and/or could reasonably be expected to be deceived by Defendants' material misrepresentations and omissions regarding the functionality of Defendants' Ads SDK and associated applications and to their detriment.

400.     Further, Defendants violated Tex. Bus. & Com. Code § 17.46(b)(2) and (3) by causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, certification, affiliation, connection, or association with Plaintiff's and Texas Subclass members' data, namely that the collection and sale of such data was not authorized or consented-to by them, and therefore unlawfully obtained.

401.    In engaging in the above-described practices, Defendants acted intentionally and with flagrant disregard of prudent and fair business practices to the extent that Defendant should be treated as having acted intentionally. Tex. Bus. & Com. Code § 17.45(13).

402.    Plaintiff and Texas Subclass members have been substantially injured by the practices described herein because their rights to privacy have been violated.

403.    As a direct and proximate result of Defendants' deceptive practices, Plaintiff and Texas Subclass members have suffered and will continue to suffer injury, losses, and damages, including but not limited to: loss of privacy; unauthorized dissemination of their valuable data; damage to and diminution of the value of their personal information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

404.    Plaintiffs and Texas Subclass members seek all monetary and non-monetary relief allowed by law, including equitable relief, actual damages, punitive damages, and reasonable attorneys' fees and costs.

<u>**COUNT TWENTY FIVE**</u>
**VIRGINIA CONSUMER PROTECTION ACT**
**VA. CODE ANN. §§ 59.1-196, *et seq*.**
(ON BEHALF OF THE VIRGINIA SUBCLASS)

405.    The Virginia Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the Virginia Subclass, repeats and realleges Paragraphs 1-82, as if fully alleged herein.

406.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

407.    Amazon is a "person" as defined by Va. Code Ann. § 59.1-198

408.    Amazon is a "supplier," as defined by Va. Code Ann. § 59.1-198.

409.    Amazon engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

410.     Amazon engaged in unfair or deceptive acts or practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of the goods and services purchased by Plaintiff and the Virginia Subclass members in violation of the Virginia Consumer Protection Act, including Va. Code Ann. §§ 59.1-200(5), (6), (8), and (14), including by:

a.  Intercepting, collecting, using, and monetizing Plaintiffs' and Virginia Subclass members' data without obtaining their consent;

b.  Omitting, suppressing, and concealing the material fact that Amazon was intercepting, collecting, using, and monetizing Plaintiff's and Virginia Subclass members' data Amazon's own financial and commercial benefit;

c.  Omitting, suppressing, and concealing material facts regarding the functionality of Defendants' Ads SDK with respect to the privacy of consumers in their own homes;

d.  Misrepresenting the purpose of the Ads SDK and that Amazon protects the privacy of Plaintiff's and the Virginia Subclass members' data, including that it would not intercept, collect, use or monetize such data without consumers' express consent; and

e.  Failing to comply with common law and/or statutory duties pertaining to the privacy of Plaintiff's and Virginia Subclass members' data.

411.     Amazon acted intentionally, knowingly, and maliciously to violate the Act, and recklessly disregarded Plaintiff's and Virginia Subclass members' rights, because Amazon intentionally intercepted, collected, used, and monetized Plaintiff's and Virginia Subclass members' data without obtaining their consent.

412.     The fact that Amazon intercepted, collected, used, and monetized Plaintiff's and Virginia Subclass members' data was material to Plaintiff's and Virginia Subclass members. This is a fact that reasonable consumers would consider important when choosing to purchase or download an application.

Cotchett, Pitre & McCarthy, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206) 802-1272
Facsimile: (650) 697-0577

413.     Plaintiff and Virginia Subclass members were deceived and/or could reasonably be expected to be deceived by Amazon's material misrepresentations and omissions regarding the functionality of Defendants' Ads SDK and associated mobile applications and the security and privacy of their data to their detriment.

414.     Amazon intended to mislead Plaintiff and Virginia Subclass members and induce them to rely on their misrepresentations and omissions.

415.     Amazon benefited from misleading Plaintiff and Virginia Subclass members as it obtained a profit from the collection of data.

416.     The foregoing unlawful and deceptive acts and practices were immoral, unethical, oppressive, and unscrupulous.

417.     Amazon's unfair or deceptive acts directly and proximately caused Plaintiff and Virginia Subclass members to suffer damages including, but not limited to: loss of privacy; damage to and diminution of the value of their personal information; the likelihood of future misuse of their data; and economic harm stemming from the exploitation of their data.

418.     Plaintiff and Virginia Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, statutory damages in the amount of $1,000 per violation if the conduct is found to be willful (or in the alternative, $500 per violation), restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A.     Certify this case as a class action, and appoint Plaintiffs as Class Representatives and the undersigned attorneys as Class Counsel;

B.     Enter judgment in favor of Plaintiffs and the Class;

C.      Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and Class members, including reformation of practices to prevent Amazon from continuing to covertly exfiltrate user location and other data;

D.      Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages to which Plaintiffs and Class members are entitled;

E.      Award disgorgement of ill-gotten monies, data, and consequently informed or trained algorithms obtained through and as a result of the wrongful conduct alleged herein;

F.      Award Plaintiffs and Class members pre- and post-judgement interest as provided by law;

G.      Enter such other orders as may be necessary to restore to Plaintiffs and Class members any money and property acquired by Amazon through its wrongful conduct;

H.      Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

I.      Award such other and further relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues triable as of right.

DATED this 7th day of February 2025.

By:     */s Thomas E. Loeser*
        Thomas E. Loeser, WSBA # 38701
By:     */s/ Karin Swope*
        Karin B. Swope , WSBA # 24015
By:     */s/ Jacob M. Alhadeff*
        Jacob M. Alhadeff, WSBA #
        COTCHETT, PITRE & MCCARTHY
        1809 7th Avenue, Suite 1610
        Seattle, WA 98101
        Telephone: (206)-802-1272
        Facsimile: (206)-299-4184
        tloeser@cpmlegal.com
        kswope@cpmlegal.com
        jalhadeff@cpmlegal.com

*Attorneys for Plaintiffs and the Putative Class*

CLASS ACTION COMPLAINT                    72          Cotchett, Pitre & McCarthy, LLP
(Case No.                )                            1809 7th Avenue, Suite 1610
                                                     Seattle, WA 98101
                                                     Telephone: (206) 802-1272
                                                     Facsimile: (650) 697-0577